[No. 82849-1. En Banc.]
Argued March 31, 2010. Decided September 16, 2010.

RICHARD B. SANDERS, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

*Paul J. Lawrence, Matthew J. Segal,* and *Gregory J. Wong* (of *K&L Gates LLP*), for appellant.

*Timothy G. Leyh, Randall T. Thomsen,* and *Katherine S. Kennedy* (of *Danielson Harrigan Leyh & Tollsefson LLP*), for respondent.

¶1 STEPHENS, J. — Justice Richard B. Sanders sued the attorney general's office (AGO) for inadequately responding to his public records request and for withholding nonexempt documents in violation of the Public Records Act (PRA), chapter 42.56 RCW. Resolving the suit requires an examination of numerous topics under the PRA, including the form of the request, the adequacy of AGO's disclosure, the adequacy of AGO's production, the appropriate penalty, and the award of costs and fees at trial and on appeal. One major issue is whether AGO violated the PRA by failing, in its response to Justice Sanders's PRA request, to provide a brief explanation of how its claimed exemptions applied to the records withheld, and what remedy follows from such a violation. We hold that AGO's failure to provide a brief explanation violated the PRA and should be considered as an aggravating factor when setting penalties for withholding nonexempt documents. Other issues pertain to the attorney-client and work product privileges and their use to claim exemptions under the PRA. We hold that the trial court correctly interpreted the work product privilege and do not reach its interpretation of the attorney-client privilege.

## TERMINOLOGY

¶2 This case involves interpretation and application of the PRA.[1] Because PRA analysis uses technical terms

---

[1] At the time of Justice Sanders's records request, the PRA was called the public disclosure act and was codified at chapter 42.17 RCW. Former ch. 42.17 RCW

that are sometimes confusing, we begin by identifying the terminology used throughout this opinion:

¶3 1. Records are either "disclosed" or "not disclosed." A record is disclosed if its existence is revealed to the requester in response to a PRA request, regardless of whether it is produced.

¶4 2. Disclosed records are either "produced" (made available for inspection and copying) or "withheld" (not produced). A document may be lawfully withheld if it is "exempt" under one of the PRA's enumerated exemptions. A document not covered by one of the exemptions is, by contrast, "nonexempt." Withholding a nonexempt document is "wrongful withholding" and violates the PRA. *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 429, 98 P.3d 463 (2004) (*Yousoufian II*).

¶5 3. A document is never exempt from disclosure; it can be exempt only from production. An agency withholding a document must claim a "specific exemption," i.e., which exemption covers the document. RCW 42.56.210(3).[2] The claimed exemption is "invalid" if it does not in fact cover the document.

## FACTS AND PROCEDURAL HISTORY

¶6 On January 27, 2003, Justice Sanders visited the Special Commitment Center on McNeil Island. *Sanders v. State*, 166 Wn.2d 164, 168, 207 P.3d 1245 (2009). This visit led to an inquiry by the Commission on Judicial Conduct (CJC). *Id.* Justice Sanders believed that he was entitled to

---

(2003). Effective July 1, 2006, the act was renamed and recodified as chapter 42.56 RCW. Laws of 2005, ch. 274. The 2003 version is applicable to Justice Sanders's request. *See, e.g., Zink v. City of Mesa*, 140 Wn. App. 328, 332 n.1, 166 P.3d 738 (2007). The current and former statutes are identical as to the provisions at issue in this case, however. For ease of reference, we cite the current PRA and merely cross-reference the former act.

[2] Former RCW 42.17.310(4) (2003).

have AGO defend him before the CJC at public expense and sued to compel AGO to do so. *Id.*

¶7 Separately, on June 15, 2004, Justice Sanders delivered a written public records request to AGO pursuant to the PRA, requesting all records pertaining to his visit to McNeil Island and the related CJC action. Clerk's Papers (CP) at 475, 478-79. AGO had already compiled a response to a broader request for similar materials from the Building Industry Association of Washington (BIAW). To expedite Justice Sanders's request, an AGO representative contacted Justice Sanders's attorney, Kurt Bulmer, to ask if he "wished to expand [his] request for documents to those which were disclosed to . . . BIAW." CP at 171, 187. Mr. Bulmer agreed to accept the additional documents. CP at 475-76. AGO sent Justice Sanders a copy of its response to the BIAW request on July 8, 2004. CP at 481-84. BIAW never objected to, or sued to supplement, the response AGO gave it. CP at 170.

¶8 AGO's response included some 1,000 pages of material and an entire document index (EDI). CP at 171, 187-224. The EDI disclosed the 334 documents that AGO was producing, producing in redacted form, or withholding, and provided information about them such as their authors, recipients, and dates of creation. CP at 1717, 187-224. It also specified AGO's claimed exemptions for the 144 documents redacted or withheld. *Id.* The EDI did not contain any facts or explanation of how its claimed exemptions applied to each document withheld. *Id.* Justice Sanders did not contact AGO to object to any of the withholding or to request further explanation. CP at 171. On July 21, 2005, he sued in Thurston County Superior Court, claiming that AGO had violated the PRA by failing to provide a brief explanation of how its claimed exemptions applied to each record withheld and by withholding nonexempt documents. CP at 5, 7.

¶9 Upon notice of the suit, AGO hired outside counsel to review the disputed documents. CP at 1763. AGO's counsel refined the claimed exemptions for several documents, as it continued to do during this litigation. CP at 1084-1125; *see*

*also* CP at 127-54 (State's "Appendix A," addressing each document in detail). Outside counsel also determined that AGO considered several disputed documents "innocuous," and so counsel produced them for Justice Sanders despite AGO's claim that the documents were exempt, nonresponsive, or previously produced. CP at 1763-64, 1084-88. The productions either expressly disclaimed waiver or proceeded as if AGO continued to claim that the documents were exempt. CP at 115, 378, 1090-91, 1093, 1113. The parties refer to these documents, which were produced subsequent to litigation, as the subsequent-production documents (SPDs). *See* Opening Br. of Hon. Richard B. Sanders (Sanders's Opening Br.) at 6-7 & n.3; *cf.* Br. of Resp't & Cross-Appellant State of Wash. (Br. of Resp't) at 10 n.34. The SPDs are distinguished from those documents that AGO never produced, which the State submitted to the trial court for an in camera determination of whether they were exempt (in camera documents). CP at 1719-20.

¶10 Justice Sanders sought discovery regarding how AGO's claimed exemption applied to each document it withheld. He noted a CR 30(b)(6) deposition, requesting that AGO supply an expert who could testify as to "[t]he grounds for each exemption claimed" and details about the privileges underlying the exemptions. CP at 499-501. At the deposition, however, the State's expert could do no more than read the EDI. CP at 564-65. Justice Sanders eventually obtained a full explanation of how each claimed exemption applied when the State moved for summary judgment. The State submitted an Appendix A, summarizing each document and arguing why it was exempt from disclosure. CP at 127-54. It also made all of the disputed documents available for in camera review. *See* CP at 1724 (describing the process for litigating the exemptions in the trial court). Justice Sanders had the opportunity to review all of the in camera documents and to respond to Appendix A. *Id.* Justice Sanders objected to Appendix A as unsworn testimony and argument based on facts not in evidence, but the trial court rejected this argument. CP at 382-89; *see* CP at

1724 (considering App. A). The trial court incorporated the summaries of the disputed documents, both sides' arguments, and its own rulings into trial court's Appendix A, CP at 1375-1434 (in camera documents), and trial court's Appendix B, CP at 1435-37 (SPDs).[3]

¶11 Both parties moved for summary judgment. The State argued that Justice Sanders agreed to narrow his request to accept only those documents produced for BIAW, and even if not, AGO had complied with the PRA and withheld only exempt documents. CP at 106-26. Justice Sanders argued that (1) he agreed to expand his request to include additional documents but never agreed to narrow his request, (2) AGO had failed to provide a brief explanation of how its claimed exemptions applied to the records withheld and thus waived exemption or was estopped from arguing that the documents were exempt, (3) AGO waived exemption by producing the SPDs or was estopped from arguing that they were nonexempt, and (4) AGO continued to wrongfully withhold some records. CP at 391-415. For these alleged violations of the PRA, Justice Sanders requested costs and attorney fees, as well as statutory per diem penalties. *Id.*

¶12 The trial court viewed the dispute over the alleged narrowing of Justice Sanders's request as a dispute over the legal sufficiency of AGO's search and disclosure. CP at 1713-17. Because Justice Sanders could not identify any documents that AGO should have disclosed but did not, and because AGO's search responded to BIAW's broader request, the trial court ruled that AGO's search for documents was legally sufficient. *Id.* The dispute over disclosure, the trial court concluded, was irrelevant to the issue of production. CP at 1716.

¶13 The trial court determined that AGO's response to Justice Sanders's request violated the PRA. Although the EDI specifically identified AGO's claimed exemptions, it failed to contain a brief explanation of how the claimed

---

[3] References to "Appendix A" are to the State's Appendix A.

exemptions applied to each record withheld. CP at 1718. The remedy for this violation was not waiver or estoppel, however, but consideration when imposing penalties for wrongfully withholding records. CP at 1718-19. Nor had AGO waived or been estopped from claiming exemption for any of the SPDs. CP at 1719-20. The question was whether any SPD or in camera document had been withheld wrongfully and what fees, costs, and penalties award should follow. *Id.*

¶14 The trial court examined each disputed document and ruled on whether it was exempt from production. CP at 1373-74, 1375-1437. The relevant exemptions were the attorney-client privilege, under RCW 42.56.070(1)[4] and RCW 42.56.290,[5] and the work product privilege, under the latter provision. In making its rulings, the trial court held that the attorney-client privilege protects all communications arising from the attorney-client relationship, once formed, not merely those pertaining to legal advice. CP at 1724. It also held that, under the "common interest" doctrine, AGO could claim certain documents were privileged even if it shared them with other agencies. *Id.* Furthermore, it implicitly held that the work product privilege could apply to documents that did not on their faces specify the controversy to which they were relevant, if the controversy could be determined from the context. *E.g.,* CP at 1395 (describing the dispute over in camera document 35). Finally, the trial court held that several documents were work product relevant to some controversy and so were exempt. CP at 1375-1437. However, a few documents were nonexempt and AGO's withholding of them had violated the PRA. CP at 1724-25.

---

[4] Former RCW 42.17.260(1) (1997). RCW 42.56.070(1) exempts anything exempted under some "other statute." In this case, the "other statute" is the attorney-client privilege statute, RCW 5.60.060(2)(a). *See Hangartner v. City of Seattle,* 151 Wn.2d 439, 452-53, 90 P.3d 26 (2004) (recognizing RCW 5.60.060(2)(a) as an "other statute" under the PRA).

[5] Former RCW 42.17.310(1)(j) (2003). RCW 42.56.290 exempts records relevant to a "controversy" to which the agency is a party if the records would not be available in civil discovery.

¶15 Because Justice Sanders prevailed on some of his claims and showed that about 5 percent of the withheld documents were nonexempt, the trial court awarded him $55,443.12, which was 37.5 percent of his costs and attorney fees.[6] CP at 1845-48. It also imposed a penalty against AGO for wrongfully withholding the documents, which the trial court grouped into two broadly categorized "records." CP at 1847. Finding that AGO acted in good faith throughout the process, the trial court imposed a penalty of $5 per day that the records were withheld, plus an additional $3 per day for AGO's failure to explain how the claimed exemptions applied to the records withheld, for a total of $8 per day per record. *Id.* Over the State's objection, the trial court included the number of days it took to adjudicate the case in its per diem calculation. *Id.* The total penalty came to $18,112.00. *Id.*

¶16 Both parties appealed. Justice Sanders challenges several aspects of the trial court's disposition of the case, as outlined below. The State responds to each of those contentions and cross appeals on its claim that it is entitled to summary judgment because Justice Sanders agreed to accept only the production given to BIAW. The Court of Appeals certified the case directly to this court, and we accepted review. Order Accepting Certification, *Sanders v. State*, No. 82849-1 (Wash. Mar. 26, 2009).

## ISSUES[7]

¶17 1. Is there a genuine issue of material fact precluding summary judgment as to whether Justice Sanders's attorney agreed to accept the production given to BIAW as full satisfaction of his PRA request?

Conclusion: Yes. The trial court is affirmed on different grounds. *See infra* pp. 844-45.

---

[6] Justice Sanders requested that the attorney fees award be multiplied by 1.5 because his attorneys took the case on contingency. The trial court declined. CP at 1858.

[7] The legal issues in this case are numerous, as a consequence of which the opinion is lengthy. For ease of reading, we indicate our disposition on each issue and cross-reference our analysis of it.

¶18 2. Did AGO's response violate the PRA if it did not contain a brief explanation of how its claimed exemptions applied to the records withheld, and if so, what is the remedy for such a violation?

Conclusion: Yes. The remedy is consideration when awarding costs and fees or when imposing penalties for failure to produce nonexempt records. The trial court is affirmed. *See infra* pp. 845-48.

¶19 3. Did AGO's subsequent production of the SPDs waive objection to or admit the proposition that the SPDs were nonexempt?

Conclusion: No. The trial court is affirmed. *See infra* pp. 849-50.

¶20 4. For each document withheld, was the failure to produce that document a PRA violation, i.e., was each document exempt from production?

¶21 a. Did the trial judge abuse its discretion by considering the State's Appendix A?

Conclusion: No. The trial court is affirmed. *See infra* pp. 850-52.

¶22 b. Does the attorney-client privilege protect every confidential communication between lawyers and clients, once the attorney-client relationship exists?

Conclusion: We assume, without deciding, that the privilege protects only legal advice, and that the trial court interpreted the privilege too broadly. *See infra* pp. 852-53.

¶23 c. Did the trial court err in relying on the "common interest" doctrine, allowing AGO to claim exemptions for documents it had shared with other agencies?

Conclusion: No. The trial court is affirmed. *See infra* pp. 853-54.

¶24 d. Did the trial court misinterpret the law when applying the work product privilege?

Conclusion: No. The trial court is affirmed. *See infra* pp. 854-57.

¶25 e. Did the court err in determining that some documents were exempt?

Conclusion: Yes, four documents were nonexempt. The trial court is reversed as to these four documents and affirmed as to all others. *See infra* pp. 857-58.

¶26 5. Did the trial court abuse its discretion in setting AGO's penalty?

¶27 a. Did the trial court abuse its discretion in assessing the "brief explanation" penalty as a $3 per day aggravator to the penalty for wrongfully withholding documents?

Conclusion: No. The trial court is affirmed. *See infra* pp. 859-61.

¶28 b. Did the trial court abuse its discretion in setting the penalty for failure to produce nonexempt documents at the bottom of the statutory range?

Conclusion: No. The trial court is affirmed. *See infra* pp. 861-63.

¶29 c. Did the trial court err when, for the purposes of calculating the penalty, it included the number of days the court took to adjudicate the case?

Conclusion: No. The trial court is affirmed. *See infra* pp. 863-64.

¶30 d. Did the court err in treating the six to nine wrongfully withheld documents as two "records" for the purposes of penalties?

Conclusion: No. The trial court is affirmed. *See infra* p. 864.

¶31 e. What penalty applies to the documents deemed nonexempt on appeal?

Conclusion: The trial court's penalty is appropriate. *See infra* pp. 864-65.

¶32 6. Did the trial court abuse its discretion in awarding Justice Sanders 37.5 percent of his fees and costs and in refusing to multiply his fees by 1.5?

Conclusion: No. The trial court is affirmed. *See infra* pp. 865-69.

¶33 7. Is Justice Sanders entitled to fees and costs on appeal?

Conclusion: Yes, to some extent. *See infra* pp. 869-71.

## ANALYSIS

### 1. Agreement To Alter PRA Request

¶34 The State argues that it is entitled to summary judgment because Justice Sanders's attorney, Mr. Bulmer, agreed to accept the production given to BIAW as a full response to Justice Sanders's records request. Because Justice Sanders got everything he requested, the State contends, he cannot seek additional production. Justice Sanders counters that Mr. Bulmer agreed to expand his request to accept additional documents but never agreed to narrow his request in any respect. The trial court avoided this issue by viewing the debate as one over the legal sufficiency of AGO's search for records in response to Justice Sanders's request. Since BIAW's request was broader and Justice Sanders did not identify any documents that should have been disclosed to him but were not, the trial court held the search to be sufficient. But, it denied the State's motion for summary judgment because the search and disclosure issue was independent of the production issues making up the rest of the case.

■ ■ ¶35 From the parties' refinement of their argument on appeal, it appears that the dispute is not over whether AGO searched for the appropriate records. The question on summary judgment is whether Mr. Bulmer agreed to accept the *production* given to BIAW or the *disclosure* given to BIAW. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). In reviewing a motion for summary judg-

ment, we construe the facts in the light most favorable to the nonmoving party. *Id.* Our review is de novo. *Id.*

¶36 The record shows that Mr. Bulmer agreed to modify his PRA request to match BIAW's. CP at 171, 187. But, there is a genuine issue of fact as to what this modification meant. The State argues that Mr. Bulmer agreed to accept the production given to BIAW. When considered in the light most favorable to Justice Sanders, however, the evidence suggests that Mr. Bulmer agreed only to accept the disclosure given to BIAW. *See id.* (AGO employee quoting Mr. Bulmer as saying that he "wished to expand [his] request for documents *to those which were disclosed* to . . . BIAW" (emphasis added)). Therefore, Justice Sanders could rightfully object to AGO's failure to produce some of the disclosed documents, even if BIAW did not do so. *See* CP at 475-76 (including Mr. Bulmer's statement that he never agreed to waive production of any requested documents). The trial court's denial of summary judgment on this issue was appropriate.

## 2. Brief Explanation Requirement and Remedy

¶37 Justice Sanders argues that AGO violated the PRA because its response to his records request (the EDI) did not provide a brief explanation of how the claimed exemptions applied to the records withheld. The State argued in the trial court that it had "explained" the claimed exemptions by identifying each withheld document's author, recipient, date of creation, and broad subject matter along with its specification of the exemption. *See* CP at 1069-70 (using an example from the EDI to illustrate). The trial court disagreed. CP at 1717-18. It construed the PRA to require an agency claiming an exemption to " 'include a statement of the specific exemption authorizing the withholding of the record (or part) *and a brief explanation of how the exemption applies to the record withheld.*' " CP at 1717 (quoting RCW 42.56.210(3)[8] (emphasis added)). The EDI was "devoid

---

[8] Former RCW 42.17.310(4).

of any explanation," and so violated the brief explanation requirement. CP at 1718.

¶38 The trial court's interpretation of the statute is correct: an agency withholding or redacting any record must specify the exemption *and* give a brief explanation of how the exemption applies to the document. RCW 42.56-.210(3).[9] The State's argument that the EDI "explains" the application of each claimed exemption is untenable, which may explain why the State has not renewed it on appeal. The identifying information about a given document does not explain, for example, why it is work product under the PRA's "controversy" exemption. *See* CP at 187-224 (claiming the controversy exemption for numerous records without specifying details such as the controversy to which each record is relevant). Allowing the mere identification of a document and the claimed exemption to count as a "brief explanation" would render the brief-explanation clause superfluous.

¶39 Furthermore, we have consistently enforced the PRA's disclosure requirements to advance its policy of public access. *See Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 269-71, 884 P.2d 592 (1994) (*PAWS* II) (declaring "silent withholding" illegal and noting that an "agency's compliance with the Public Records Act is only as reliable as the weakest link in the chain"); *Rental Hous. Ass'n v. City of Des Moines*, 165 Wn.2d 525, 540, 199 P.3d 393 (2009) (relying on *PAWS* II to conclude that failure to require an indication of "whether there is a valid basis for a claimed exemption for an individual record" would "defeat[ ] the very purpose of the PRA"). Claimed exemptions cannot be vetted for validity if they are unexplained. Thus, AGO's failure to explain its claimed exemptions violated the PRA.

¶40 The remedy for such a violation is a more difficult issue. Justice Sanders argues that the remedy is waiver or estoppel. *See* Sanders's Opening Br. at 36-41; CP at 1718-19. In other words, by failing to adequately explain a

---

[9] *Id.*

claimed exemption, AGO either waived the right to claim the exemption or is estopped from arguing an explanation other than one found in the EDI. Since the EDI contained no explanation, AGO would be estopped from offering any explanation. *Id.* The State's position is that the only remedy for the brief explanation violation is to compel the agency to explain. Br. of Resp't at 48-49. This is because an agency can meet the explanation requirement in court submissions. *See id.* (citing *PAWS* II). The trial court adopted neither position. It concluded that an exempt public record does not lose its exemption because of an inadequate response to a request. CP at 1718. Rather, the PRA gives the requester the right to sue and authorizes the imposition of penalties against an agency for wrongfully withholding the record. *Id.* The trial court therefore held that the remedy for a brief explanation violation is consideration when awarding costs, attorney fees, and penalties. CP at 1719.

¶41 We have already rejected the waiver or estoppel argument that Justice Sanders advances. In *PAWS* II, the agency initially explained its claimed exemptions to the requester but then sought to argue different explanations during litigation. 125 Wn.2d at 253. We held that a court may consider an agency's new explanations, expressing concern that agencies' responses to PRA requests would be too slow if their initial responses were binding. *Id.* If Justice Sanders's view of the law were correct, the initial, incorrect explanation would have led to waiver or estoppel and the State would not have been able to argue new explanations in court. This is exactly the outcome we wished to avoid in *PAWS* II.

¶42 On the other hand, the State's interpretation contravenes the PRA's purpose. If the only remedy for a failure to explain is to sue to compel explanation, the agency has no incentive to explain its exemptions at the outset. This forces requesters to resort to litigation, while allowing the agency to escape sanction of any kind. *Cf. Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103-04, 117 P.3d 1117 (2005) (refusing to allow agencies to resist complying

with the PRA until after a suit is filed without facing a penalty).

¶43 The trial court's conclusion reflects a fair middle ground under the PRA: the agency's failure to provide a brief explanation should be considered when awarding costs, fees, and penalties, but the agency is not foreclosed from offering a satisfactory explanation. Such an interpretation serves the PRA's policy of disclosure by providing incentives for the agency to explain its claimed exemptions, while avoiding the negative consequences warned of in *PAWS* II. *Cf. Rental Hous. Ass'n*, 165 Wn.2d at 540 (requiring a detailed privilege log based on similar considerations).

¶44 The interpretation also follows from the PRA's text. The PRA entitles a prevailing party in an action "seeking the right to inspect or copy any public record *or the right to receive a response to a public record request*" to costs and reasonable attorney fees. RCW 42.56.550(4)[10] (emphasis added). The "brief explanation" requirement is one aspect of the "response[s]" referred to in this provision. *See* RCW 42.56.210(3)[11] (*"Agency responses* refusing, in whole or in part, inspection of any public record *shall include . . . a brief explanation* of how the exemption applies to the record withheld." (emphasis added)).

¶45 In addition, as discussed below in part 5, an agency's failure to explain its claimed exemptions is relevant to the agency's "lack of strict compliance . . . with all the PRA procedural requirements," which may aggravate the penalty for wrongfully withholding public records. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467, 229 P.3d 735 (2010) (*Yousoufian* V).

¶46 In sum, AGO's failure to provide a brief explanation of its claimed exemptions violated the PRA. The remedy for the violation is consideration when awarding costs, fees, and penalties.

---

[10] Former RCW 42.17.340(4) (1992).

[11] Former RCW 42.17.310(4).

3. Subsequent Production

¶47 Justice Sanders contends that AGO waived its right to claim that the SPDs were exempt when it produced them after suit was filed. He urges us to hold that agencies may not force a requester to sue and then escape penalties by producing the documents after litigation begins. AGO responds that it has always maintained that the documents were exempt, but, after outside counsel reviewed them, AGO determined that it considered several of the documents "innocuous" and so produced them in a good-faith effort to narrow the area of dispute. The trial court found that the State had disclaimed waiver and had maintained that the documents were exempt. CP at 1720. It therefore held that the State had not waived the right to claim exemptions, nor was it estopped from doing so. *Id.*

¶48 The determination of waiver is a mixed question of law and fact. *Brundridge v. Fluor Fed. Servs., Inc.,* 164 Wn.2d 432, 440-41, 191 P.3d 879 (2008). The record supports the trial court's crediting of the State's claim that it did not intend to relinquish its claimed exemptions. CP at 115, 378, 1090-91, 1093, 1113. AGO simply determined that it did not care if certain documents were produced and so it produced them. We decline to penalize agencies that cooperate with PRA litigants in this manner by construing such cooperation as a waiver.

¶49 Nor do we believe that production of documents after the requester files suit ipso facto admits that the initial withholding of the documents was wrongful. The PRA's purpose is to increase access to government records. *See* RCW 42.56.030.[12] If an agency were deemed to concede wrongdoing simply because it produced documents during litigation, it would reduce the incentive for agencies to produce the documents. This outcome would be antithetical to the legislative intent. Rather, the appropriate inquiry is whether the records are exempt from disclosure. If they are

[12] Former RCW 42.17.251 (1992).

exempt, the agency's withholding of them was lawful and its subsequent production of them irrelevant. If they are nonexempt, the agency wrongfully withheld the records and the appropriate penalty applies for the numbers of days the record was wrongfully withheld—in other words, until the record was produced. This interpretation of the PRA provides an incentive for agencies to produce records for which claims of exemption may fail in an effort to reduce their exposure to potential penalties. This was the approach followed by the trial court in this case, CP at 1720, and we affirm its resolution of this issue.

4. Evaluation of Claimed Exemptions

¶50 Justice Sanders challenges the trial court's rulings on each of AGO's claimed exemptions. He points to four distinct legal issues, asserting that the trial court misapplied the law in each instance. He then asks this court to determine de novo the validity of the claimed exemption for each document. The State, on the other hand, defends the trial court's rulings of law on each document.

a. State's Appendix A

¶51 Preliminarily, Justice Sanders argues that the trial court should not have considered the State's Appendix A, filed with the State's motion for summary judgment. He claims that Appendix A contains facts not in the record and amounts to unsworn testimony by AGO's attorneys. Sanders's Opening Br. at 35 n.25. Moreover, Justice Sanders asserts, the State may not contradict the deposition testimony of its CR 30(b)(6) expert. *Id.* The expert was retained to testify about how each claimed exemption applied to the record withheld, but in fact could do no more than read the EDI. As a sanction for this alleged subversion of the discovery process, Justice Sanders argues that Appendix A should have been rejected. *Id.*

¶52 The State responds that Appendix A is not unsworn testimony; it is analogous to a series of cover sheets. Each cover sheet summarizes the contents of a disputed docu-

ment and AGO's argument for why the document is exempt, in an effort to reduce or eliminate the need for extensive oral argument on each document. As to its CR 30(b)(6) expert, the State maintains that its expert was the person most qualified to discuss the procedure for amassing *the total response* to Justice Sanders's records request, not the specifics of any given document. The State therefore argues that it did not subvert the discovery process.

¶53 The trial court evidently adopted the State's view, as it created its own appendices incorporating the State's Appendix A, Justice Sanders's responding arguments, and the court's rulings on each document.

¶54 A trial court may exercise reasonable control over the orderly presentation of argument and evidence. *See, e.g.*, ER 611(a) (granting the court authority to make the "presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time"); *State v. Johnson*, 77 Wn.2d 423, 426, 462 P.2d 933 (1969) ("Because the trial court has a duty to conduct the trial fairly, expeditiously and impartially, it has a corresponding power to adopt practices and procedures reasonably designed to secure such ends."). When considering a procedure "not regulated or covered by statute, formal rule or precedent," we review in light of that "wide discretion." *Johnson*, 77 Wn.2d at 426.

¶55 Appendix A contains summaries of the disputed documents and arguments for why each is exempt, usually predicated on the fact that the document is relevant to some controversy. *See* CP at 127-54. The disputed documents in a PRA case may be reviewed in camera by the court to determine whether they are exempt. RCW 42.56-.550(3).[13] Because these documents were in the record, summaries of them would be permissible under ER 1006 (allowing summaries of voluminous documents if the originals are also made available). The existence of the controversies was evidenced by affidavits, *see* CP at 1721-22 (discussing the affidavits identifying controversies), or by

---

[13] Former RCW 42.17.340(3).

the disputed documents themselves, *e.g.*, CP at 129 ("The 'controversy' is the *Thorell*[14] and *Spink*[15] cases, which are referenced in the letter itself."). The rest of the material in Appendix A is the State's arguments for why the documents are exempt. *PAWS* II allows a court to hear these arguments even if the agency did not previously assert them to explain claimed exemptions. 125 Wn.2d at 253. Thus, the trial court had no reason to think that any portion of Appendix A violated the law. Justice Sanders had the opportunity to respond to it and to review all of the in camera documents. In effect, Appendix A simply moved along a process that otherwise would have required extensive oral argument on each document. Considering Appendix A was within the trial court's wide latitude to control the presentation of argument and evidence.

b. Scope of Attorney-Client Privilege

¶56 Justice Sanders objects to the trial court's interpretation of the attorney-client privilege. The trial court held that "[o]nce an attorney-client relationship exists, any communication arising from that relationship is privileged, unless waived or controlled by a recognized exception to the privilege." CP at 1724. It applied this understanding when determining whether the disputed documents were exempt. *Id.* Justice Sanders argues that the privilege protects only communications pertaining to legal advice and urges us to hold that if the client is not seeking legal advice when communicating with the attorney, the communication is not privileged. Otherwise, he maintains, "every phone call" from AGO to a government agency will be privileged. Sanders's Opening Br. at 34.

¶57 It is unnecessary to decide whether Justice Sanders's interpretation of the attorney-client privilege is correct. If the issue were dispositive as to any document withheld in this case, we would determine the proper scope

---

[14] *In re Det. of Thorell*, 149 Wn.2d 724, 72 P.3d 708 (2003).

[15] *In re Det. of Spink*, 112 Wn. App. 287, 48 P.3d 381 (2002).

of the attorney-client privilege and, if the trial court applied the wrong legal standard, remand to the trial court for application of the proper standard. However, we have reviewed all of the disputed documents as part of our analysis of the work product privilege, discussed below. In the interest of judicial economy, we also reviewed each claim of attorney-client privilege. In doing so we assumed, without needing to decide, that the attorney-client privilege protects only communications pertaining to legal advice. The result in this case is the same irrespective of whether we adopt the trial court's analysis of the attorney-client privilege or the analysis advocated by Justice Sanders. Our conclusions are set forth below in part e.

c. "Common Interest" Doctrine

¶58 Justice Sanders argues that the trial court erroneously exempted several documents under the "common interest" doctrine. This doctrine is not one of the enumerated PRA exemptions, he notes, and the courts are not empowered to fashion new exemptions. Even if the doctrine is part of the exemptions based on privileges, Justice Sanders contends that the legislature did not intend for the courts to wield authority over broad exceptions to disclosure, and so the common law "common interest" doctrine should not be interpreted to apply to the PRA. The State responds that the "common interest" doctrine is merely a common law exception to waiver of privilege that applies when parties share a common interest in litigation. The trial court agreed. CP at 1724. So do we.

¶59 The "common interest" doctrine provides that when multiple parties share confidential communications pertaining to their common claim or defense, the communications remain privileged as to those outside their group. *Broyles v. Thurston County*, 147 Wn. App. 409, 442, 195 P.3d 985 (2008); *accord Morgan v. City of Federal Way*, 166 Wn.2d 747, 757, 213 P.3d 596 (2009) (citing *Broyles*). Justice Sanders argues that the doctrine is an unwarranted expansion of the PRA exemptions, but we have already recognized

its application to attorney-client privilege in the PRA context. *See Morgan*, 166 Wn.2d at 757 (applying the doctrine in a PRA case). Furthermore, the "common interest" doctrine is not an expansion of the privilege at all; it is merely an exception to waiver. *See id.* ("The presence of a third person during the communication waives the privilege, unless the third person is necessary for the communication, or has retained the attorney on a matter of 'common interest.'" (citations omitted) (quoting *Broyles*, 147 Wn. App. at 442)). And in any event, documents that fall under the common interest doctrine are not discoverable in civil cases and so are exempt under the controversy exemption. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007) ("Any materials that would not be discoverable in the context of a controversy under the civil rules of pretrial discovery are also exempt from public disclosure under [the PRA]."). The trial court did not err by applying the "common interest" doctrine, where relevant, to the disputed documents.

d. Work Product Privilege and Controversy Exemption

¶60 Justice Sanders argues that the trial court incorrectly ruled that some documents were privileged work product even though they (1) did not specify on their face the controversy to which they were relevant, (2) did not pertain to the three controversies specifically mentioned by the trial court in its opinion, or (3) were created well before litigation to have been created in reasonable anticipation of the litigation.

¶61 RCW 42.56.290[16] exempts records from disclosure if they are "relevant to a controversy to which an agency is a party but . . . would not be available to another party under the rules of pretrial discovery." The "'controversy'" must be completed, existing, or reasonably anticipated litigation. *Morgan*, 166 Wn.2d at 754.

¶62 (1) Controversy Not Facially Apparent. Nowhere does the statute say that the "controversy" must

---

[16] Former RCW 42.17.310(1)(j).

appear on the face of the record claimed exempt. Indeed, the use of the term "relevant" evokes the concept of relevance applicable to pretrial discovery: "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401 (emphasis added). Clearly, this broad definition includes evidence that does not facially relate to a given controversy, but whose relevance arises indirectly from context. *See Faust v. Albertson,* 167 Wn.2d 531, 538, 222 P.3d 1208 (2009) ("[C]ircumstantial and direct evidence are viewed as equivalently valuable.").

¶63 In *Soter,* we examined several records to determine if they were work product protected from PRA disclosure. 162 Wn.2d 716. Most of those records were handwritten notes of witness interviews, which was enough to reveal their connection to a "controversy." *Id.* at 732-33, 743-44. We did not discuss whether the nature of the controversy appeared on the document. It was enough that one could infer the document's relevance to the pending suit from the fact that it pertained to testimony or facts that would be at issue in the suit. Thus, the trial court did not err in ruling that the work product privilege protects documents even if they do not specify on their face a controversy to which they are relevant.

¶64 (2) Controversy Not Enumerated. The trial court specially noted three controversies to which the exempt documents were relevant. *See* CP at 1721-22. However, the "controversy" exemption does not apply only to a specific controversy or controversies, but to any controversy to which the agency is a party. RCW 42.56.290[17] exempts records "relevant to *a* controversy to which an agency is a party," not *the* controversy, *one* controversy, or *some* controversies. *Id.* (emphasis added). Therefore, it was not necessary for the trial court to single out the controversy to which a given piece of work product was relevant, so long as the evidence revealed that the document was in fact relevant to

---

[17] Former RCW 42.17.310(1)(j).

a controversy to which the agency was a party. For example, in camera document 42 consists of an e-mail string among AGO attorneys regarding a letter to opposing counsel in a case involving an individual committed on McNeil Island. 1 Sealed Docs. 42; CP at 1398-99. Even though these e-mails do not relate to the controversies the trial court enumerated, they reveal AGO attorneys' mental impressions about ongoing litigation to which the State was a party, and so are privileged work product. *See Soter*, 162 Wn.2d at 743-44. Below, we review each disputed document to determine whether each claim of work product in fact related to any controversy to which the State was a party. *See infra* Part e.

 ¶65 (3) <u>Document Predates Controversy by Too Long.</u> The controversy exemption pertains to work product relevant to completed, existing, or reasonably anticipated litigation. *Soter*, 162 Wn.2d at 732. In *Dawson v. Daly*, we adopted this definition of "controversy" as opposed to one based on " 'a prolonged public dispute, debate or contention' " because the latter was too broad. 120 Wn.2d 782, 790, 845 P.2d 995 (1993), *abrogated on other grounds by PAWS II*, 125 Wn.2d at 257-58. The distinction is one based on the expected likelihood of formal litigation, not merely the controversial nature of the agency's work. *See Hangartner v. City of Seattle*, 151 Wn.2d 439, 449-50, 90 P.3d 26 (2004). In *Hangartner*, the city claimed exemptions for documents pertaining to a city ordinance governing permits for construction of the light rail system. *Id.* at 443. The city argued that the "controversy" exemption applied because of the " 'litigation-charged atmosphere' " surrounding the light rail's construction. *Id.* at 450 (quoting City's Opening Br. at 43). We declined to recognize the exemption: the considerable public debate over the light rail did not "establish that there was any threat or reasonable anticipation of litigation concerning the enactment" of the ordinance. *Id.* The opposite conclusion would endorse the " 'prolonged public dispute' " definition rejected in *Dawson*. *Id.* (quoting *Dawson*, 120 Wn.2d at 790).

¶66 Under *Hangartner*, the issue is not how long before litigation commences a document is created, but whether

the litigation is reasonably anticipated (as opposed to whether the issue is politically controversial). Thus, Justice Sanders's objection that certain documents, such as in camera document 75, were created months before litigation commenced misses the point. 2 Sealed Docs. 75.

¶67 In camera document 75 was redacted to remove an e-mail string from Chief Deputy Attorney General Kathy Mix to the Office of Financial Management discussing how to respond to Justice Sanders's request for a public defense before the CJC. CP at 1414. AGO claims that this document was created in reasonable anticipation of litigation, namely Justice Sanders's suit against the State when it refused to pay for his defense. *Id.* AGO claims that it anticipated litigation because Justice Sanders had previously sued the State to provide him with a defense in another ethics matter, *In re Disciplinary Proceeding Against Sanders*, 135 Wn.2d 175, 955 P.2d 369 (1998). Br. of Resp't at 26-27 & n.101. The fact that the suit did not occur until three months later does not render the State's anticipation of litigation unreasonable.

¶68 As the example shows, the trial court did not err by holding that documents can be exempt as work product even if created some time before the anticipated controversy. Accordingly, we review each disputed document to determine whether each claimed piece of work product was relevant to completed, existing, or reasonably anticipated litigation.

e. Examination of Each Document

¶69 Justice Sanders asks us to review each claimed exemption de novo to determine its validity. Sanders's Opening Br. at 19. We have done so in detail.

¶70 For each document, we have examined the AGO's claimed exemption, the trial court's ruling, and Justice Sanders's contentions on review. Assuming the narrow view of the attorney-client privilege advocated by Justice Sanders, and applying the work product privilege as set forth above, we affirm almost all of the trial court's rulings. However, we reverse the trial court's rulings that four documents were exempt:

- SPDs 44, 50, and 51: These are cover e-mails pertaining to in camera documents 94 and 103. The trial court correctly ruled that those in camera documents are nonexempt but neglected to realize that the cover e-mails are also nonexempt. The cover e-mails neither reveal attorney thought processes about, nor are they relevant to, any pending, completed, or reasonably anticipated litigation to which the State (as represented by AGO) was a party. Instead, they relate to the screening procedures to be used during the CJC proceeding against Justice Sanders, which fall outside the scope of the privilege.
- SPD 52: Like the SPDs just discussed, this e-mail string relates to screening during the CJC proceeding, and so is largely outside the scope of the work product privilege. But, it contains one line suggesting that AGO attorneys might consult with the attorney who represents CJC about the proceeding against Justice Sanders. The only reason the AGO attorneys might do so would be because it was relevant to their own cases, in which they planned to file motions to recuse Justice Sanders on grounds similar to those forming the basis of the CJC complaint. Thus, this portion of SPD 52 reveals attorney thought processes about pending litigation and should be redacted. The document should have been produced with redactions.

We reverse the trial court's rulings and deny AGO's claim of exemption as to these four documents—except as to the redactable material in SPD 52—and assess costs and fees accordingly. *See infra* Part 7. Denying the claimed exemptions for these documents also affects the award of penalties. Because we affirm the trial court's penalty determination, we apply that determination to these four documents. *See infra* Part 5.e. We affirm the trial court's rulings on all of the other documents.

5. Penalty

¶71 The trial court imposed an $8 per day per record penalty against AGO for wrongful withholding. CP at 1847.

This penalty consisted of a $5 per diem penalty for the wrongful withholding itself—the statutory minimum, in light of the trial court's finding of AGO's good faith—plus a $3 per diem aggravator for failure to provide a brief explanation of its claimed exemptions. *Id.* For purposes of its calculation, the trial court categorized the wrongfully withheld documents into two "records" and included the number of days that the trial court took to decide the case. *Id.*

¶72 Each side contests some aspect of the trial court's imposition of penalties. Justice Sanders argues that the trial court abused its discretion in setting the amount per diem for both the wrongful withholding and the brief explanation violation, by not assessing penalties for all of the SPDs, and by grouping the documents into only two records. The State argues that the court correctly calculated penalties except for its inclusion of the length of adjudication in its calculation and its imposition of any penalty for the brief explanation violation.

¶73 Importantly, we recently announced a multifactor test for determining the amount per diem of a penalty for wrongful withholding. *Yousoufian* V, 168 Wn.2d at 467-68. The trial court did not apply this new test because it did not exist when this case was litigated below. Nevertheless, we conclude that the trial court's method of analysis adequately anticipated our decision in *Yousoufian* V and so affirm its penalty award as an appropriate exercise of discretion.

a. Aggravator for Brief Explanation Violation

¶74 AGO failed to explain any of its claimed exemptions in the EDI. The trial court imposed penalties for the brief explanation violation as an aggravator for the penalty for wrongfully withholding records. The State argues that no aggravator for a brief explanation violation is permissible. In contrast, Justice Sanders treats the brief explanation violation as deserving of a freestanding penalty under the PRA, meaning that the penalty must be within the statutory range of $5-$100 per diem.

¶75 We hold that the trial court's view of the matter is correct. The PRA provision authorizing awards of costs, fees, and penalties reads:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

RCW 42.56.550(4).[18] The first sentence entitles a prevailing party to costs and reasonable attorney fees for vindicating "the right to inspect or copy" or "the right to receive a response," but the second sentence authorizes penalties only for denials of "the right to inspect or copy." *Id.*

¶76 Because of this difference, the penalty section does not expressly authorize a freestanding penalty for the failure to provide a brief explanation. It is the "response" that is insufficient when the brief explanation is omitted. *See* RCW 42.56.210(3)[19] (*"Agency responses* refusing, in whole or in part, inspection of any public record *shall include . . . a brief explanation* of how the exemption applies to the record withheld." (emphasis added)). In contrast, the right to inspect or copy turns on whether the document is actually exempt from disclosure, not whether the response contained a brief explanation of the claimed exemptions.

¶77 Nevertheless, although the PRA does not expressly sanction a *separate* penalty for a brief explanation violation, the violation may *aggravate* the penalty for wrongfully

---

[18] Former RCW 42.17.340(4).

[19] Former RCW 42.17.310(4).

withholding a record.[20] *See* RCW 42.56.550(4)[21] (allowing penalties for violation of the right to inspect or copy). One factor in setting the penalty for wrongful withholding is the agency's strict compliance with the PRA, or lack thereof. *See Yousoufian V*, 168 Wn.2d at 467. As discussed above in part 2, an agency violates the PRA when it fails to provide a brief explanation of how the claimed exemptions apply to the records withheld. This violation is relevant to the agency's lack of compliance with the PRA. Therefore, the failure to provide the "brief explanation" may act as an aggravating factor when assessing penalties for wrongfully withholding nonexempt documents.

¶78 This understanding of the penalty calculation answers Justice Sanders's contention that the amount of penalty for the brief explanation violation must be within the statutory range of $5-$100. Because the aggravator for a brief explanation violation is merely one factor in the calculation of penalties for wrongful withholding, it need not itself be within the statutory range. It is the total penalty for wrongful withholding that must fall within that range.

¶79 The trial court correctly treated the brief explanation violation as an aggravating factor in the penalty calculation for wrongfully withholding records.

b. Amount Per Diem

¶80 Justice Sanders challenges the trial court's decision to impose almost the statutory minimum penalty, predicated on a finding of AGO's good faith throughout the PRA process. Justice Sanders argues that this award is inappropriate because AGO did not act in good faith. He characterizes several aspects of AGO's behavior during this case as sharp practices and asks us to impose a higher penalty.

---

[20] Because AGO wrongfully withheld some documents, necessitating a remedy, we do not address whether the PRA impliedly authorizes penalties for a brief explanation violation if the requester will otherwise have no remedy.

[21] Former RCW 42.17.340(4).

¶81 In our recent *Yousoufian* V opinion, we explained the trial court's discretion to set the per diem penalty as follows. The trial court must consider the entire statutory range of $5-$100. 168 Wn.2d at 466. There is no presumptive starting point, not even the midpoint of this range; the trial court should use its discretion in determining where to begin. *Id.* at 466-67. The mitigating factors are:

> (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

*Id.* at 467 (footnotes omitted). The aggravating factors are:

> (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Id.* at 467-68 (footnotes omitted).

¶82 Reviewing the trial court's penalty assessment in this case, we find nothing inconsistent with the *Yousoufian* V test. The trial court did not presume any starting point, but considered the full statutory range. It determined that AGO acted in good faith and did not credit any of Justice Sanders's arguments to the contrary. However, the

trial court noted that, despite proceeding in good faith, AGO had not strictly complied with the PRA's brief explanation requirement, which aggravated the penalty. *See id.* at 467 (aggravating factor 3). Thus, the trial court did not expressly examine *all* of the *Yousoufian* V factors—we had not yet announced them. But, clairvoyance is not a necessary qualification for the bench. In all, we find no abuse of discretion in the trial court's selection of $8 per day per record as the appropriate penalty amount.

c. Inclusion of Adjudication Period in Penalty Calculation

¶83 AGO attempted to persuade the trial court that it should omit from the penalty calculation the number of days the court took to decide the case. The trial court believed that it had no discretion to do so, relying on *Yousoufian* II, 152 Wn.2d at 438. CP at 1847. AGO asks us to reverse this holding because it forces an agency to "run[ ] the risk of being severely penalized for delays that are not of its making." Br. of Resp't at 47.

¶84 In *Yousoufian* II, the plaintiff delayed suing for 647 days but ultimately prevailed on the issue of production. 152 Wn.2d at 426-28. The trial court held that 120 days was the longest the plaintiff should reasonably have delayed, and so reduced the number of days for purposes of calculating the penalty by 527 days (647 minus 120). *Id.* The Court of Appeals upheld the calculation under an abuse of discretion standard. *Id.* at 428-29. We reversed, holding that the standard of review was de novo. *Id.* at 436-38. We read the PRA to unambiguously provide that the penalty must be for each day the record was wrongfully withheld. *Id.* The only limits on the plaintiff's ability to collect penalties after delay are the statute of limitations and, perhaps, laches. *Id.*

¶85 AGO tries to distinguish *Yousoufian* II because, in that case, the delay was attributable to the plaintiff and not to the court. This misses the point. Regardless of who delayed in *Yousoufian* II, the agency was not the party at fault. Consistent with *Yousoufian* II, we should hold that the

PRA requires the agency to pay a penalty for each day the requester is unable to inspect or copy a nonexempt record, regardless of whether the agency created the delay. This rule may seem harsh, but it is the unambiguous meaning of the statute. *See id.* at 437 (" 'If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the Legislature intended.' " (quoting *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001))). The trial court did not abuse its discretion on this point.

### d. Number of Records

¶86 The trial court divided the documents into two "records," one pertaining to Justice Sanders's PRA request itself and one pertaining to the CJC complaint against Justice Sanders and the ensuing investigation. CP at 1847. Justice Sanders argues that dividing the documents into two records was unprincipled. The documents were created at separate times and have content relevant to different matters. Furthermore, they were produced in four batches. He maintains that there should be more than two "records."

¶87 In *Yousoufian* II, the trial court grouped the documents withheld into 10 records based on time of production and subject matter. 152 Wn.2d at 427. We approved of this grouping and held that a trial court has discretion not to impose penalties for each wrongfully withheld document individually. *Id.* at 435-36. Here, the trial court interpreted the PRA request as seeking two records, as grouped broadly by subject matter. This is consistent with the discretion we elucidated in *Yousoufian* II.

### e. Penalty for Records Deemed Nonexempt on Appeal

¶88 In part 4.e above, we reversed the trial court's ruling that four documents (SPDs 44, 50-52) were exempt. These four wrongfully withheld documents all relate to the same topic, screening procedures at AGO during Justice Sanders's CJC proceeding, and were produced at roughly the

same time. Consistent with our affirmance of the trial court's grouping of the other documents in this case, we consider these four documents a single "record." Thus, in addition to the penalty assessed by the trial court, which we have affirmed, we impose an additional penalty of $8 per day ($8/day/record x 1 record) for the number of days that elapsed between Justice Sanders's PRA request and the date on which AGO produced the last of these four SPDs to him.

## 6. Fees and Costs at Trial

¶89 Justice Sanders argues that the trial court abused its discretion by awarding him only 37.5 percent of his costs and attorney fees and by not multiplying the award by a lodestar multiplier of 1.5.

### a. Allocation of Costs and Fees Among Claims

¶90 The PRA awards the prevailing party "all costs, including reasonable attorney fees." RCW 42.56.550(4).[22]

¶91 To determine the extent to which Justice Sanders "prevailed," the trial court separated the case into four issues: (1) whether the documents withheld by AGO were exempt, (2) the remedy for a violation of the "brief explanation" requirement,[23] (3) whether AGO's search for records was legally sufficient, and (4) whether AGO's subsequent production was ipso facto an admission that the SPDs were nonexempt and thus withheld wrongfully. CP at 1854-56. The issues bore the following weights, based on their difficulty and the work involved in litigating them: (1) 50 percent, (2) 10 percent, (3) 20 percent, (4) 20 percent. CP at 1859-60. Justice Sanders prevailed on only the first of these issues and only on some 5 percent of the documents. *Id.* However, the trial court did not believe a pro rata allocation

---

[22] Former RCW 42.17.340(4).

[23] The trial court framed issue 2 as the remedy for the brief explanation violation, rather than the existence of that violation, because it considered the violation obvious. CP at 1855. The remedy for the violation was the contested issue. *Id.*

was appropriate because the amount of effort to contend that the final disputed document was nonexempt was far less than the effort to contend that the first few documents were nonexempt. In other words, there were economies of scale involved, such that it was fairer to award Justice Sanders 75 percent of the fees allocated to issue (1). CP at 1860-61. The court therefore awarded Justice Sanders 37.5 percent (75 percent x 50 percent) of his total fee request. *Id.*; *see also* CP at 1845 n.1.

¶92 Justice Sanders argues that the trial court incorrectly subdivided and assigned weight to the issues. Justice Sanders believes the "issue" of the AGO's search for documents was collateral at best. Also, the trial court counted the SPDs as a separate issue on which the State prevailed, despite the fact that the court ruled that some of the SPDs were wrongfully withheld. Furthermore, he contends, the trial court held that AGO prevailed on the "brief explanation" claim despite the fact that the court found the State to be in violation of the PRA on that requirement. This issue should have received more than 10 percent weight. Finally, the propriety of withholding the disputed documents was assigned only 50 percent weight, and the trial court considered Justice Sanders to have prevailed on only 5 percent of that, despite the fact that Justice Sanders showed that some of the documents were nonexempt and could not have obtained this ruling without expending *all* of the attorney fees requested. Justice Sanders maintains that he is entitled to all of his requested costs and fees because his total expenditure was indivisible.

¶93 Whether to award costs and attorney fees is a legal issue reviewed de novo. *See Spokane Research*, 155 Wn.2d at 103-04 & n.10. We have not articulated a standard of review for how much to award, however. Some Court of Appeals cases have concluded that the amount should be reviewed for abuse of discretion.[24] This approach mirrors

---

[24] *Citizens For Fair Share v. Dep't of Corr.*, 117 Wn. App. 411, 437, 72 P.3d 206 (2003); *Yousoufian v. Office of King County Executive*, 114 Wn. App. 836, 846-47, 60

review of attorney fee awards in other contexts. *E.g.*, *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 593, 220 P.3d 191 (2009). It also mirrors the review of penalties under the PRA, in which whether to award is mandatory but how much to award is discretionary. *See Yousoufian* II, 152 Wn.2d at 430-33. We adopt the abuse of discretion standard.

¶94 It is clear that a court has the discretion to apportion an award of costs and fees so that it does not relate to any exempt documents. *Limstrom v. Ladenburg*, 136 Wn.2d 595, 616, 963 P.2d 869 (1998) (requiring that an award "relate only to that which is disclosed and not to any portion of the requested documents found to be exempt"); *Dawson*, 120 Wn.2d at 800 (same). Whether the trial court had authority to apportion the award based on other issues in the case—i.e., besides the propriety of withholding each document—is a more difficult question. We have held that the " 'prevailing' " inquiry under RCW 42.56.550(4)[25] "relates to the legal question of whether the records should have been disclosed on request," suggesting that this is the only relevant issue. *Spokane Research*, 155 Wn.2d at 103.[26] But in *Spokane Research*, no issue pertaining to the brief explanation requirement or the remedy for its violation appeared. Since the right to a "response" also appears in the costs and fees provision, it would seem at a minimum that these issues should also factor into the fee and cost apportionment. *See* RCW 42.56.550(4)[27] (entitling a party vindicating "the right to receive a response to a public record request" to costs and attorney fees).

---

P.3d 667 (2003), *aff'd in part, rev'd in part by Yousoufian* II, 152 Wn.2d at 440; *Doe I v. Wash. State Patrol*, 80 Wn. App. 296, 302, 908 P.2d 914 (1996), *abrogated on other grounds by Yousoufian* II, 152 Wn.2d at 436.

[25] Former RCW 42.17.340(4).

[26] The question of whether the SPDs were nonexempt because of their subsequent production bears upon "whether [they] should have been disclosed," and so fits within the penalty calculation even under this standard. *Spokane Research*, 155 Wn.2d at 103.

[27] Former RCW 42.17.340(4).

¶95 On the other hand, the trial judge also considered one of the issues to be the sufficiency of AGO's search for documents. This search issue does not appear in the costs and fees provision and so perhaps should not be considered when awarding costs and fees. But, we need not decide the question. As indicated above, the real issue was whether there was a genuine issue of fact precluding summary judgment. No party "prevailed" on the nonissue of the sufficiency of the search.

¶96 The issues relevant to the apportionment of costs and fees, then, were (1) the ultimate validity of the claimed exemptions, (2) the brief explanation violation, (3) the remedy for a brief explanation violation, and (4) the effect of subsequent production on AGO's claims of exemption. The first issue was primary, while the other three were secondary. The trial court assigned no weight to the brief explanation violation because it was obvious. This is unusual: Justice Sanders's attorneys established the violation by suing. By way of analogy, one would not deny costs and attorney fees to a prevailing party in an action under 42 U.S.C. § 1983 just because it was "obvious" that the party's constitutional rights were violated. We give the existence of the brief explanation violation the same weight as the remedy for the violation.

¶97 Viewing the issues in this light, the chief question in the case was the propriety of withholding the documents AGO claimed were exempt. Around 95 percent of the claimed exemptions proved valid, suggesting that Justice Sanders's fees and costs should be deeply discounted. *Limstrom*, 136 Wn.2d at 616. Justice Sanders prevailed on one secondary issue, his brief explanation claim, but did not prevail on the other two secondary issues. Under these circumstances, the trial court's award of 37.5 percent of Justice Sanders's requested costs and fees appears reasonable. While we may quibble with some of the trial court's reasoning, on the whole its award of fees and costs was within its discretion.

b. Lack of Lodestar Multiplier

¶98 Justice Sanders asked the trial court to multiply his attorney fees award by a lodestar multiplier of 1.5 because his attorneys worked on contingency. CP at 1858. The trial court declined to do so because the rate times hours calculation of the award already exceeded the fee under the contingency contract. *Id.* Justice Sanders assigns error to this decision.

¶99 The lodestar method is appropriate for calculating attorney fees under the PRA. *West v. Port of Olympia*, 146 Wn. App. 108, 123, 192 P.3d 926 (2008) (applying *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632, 966 P.2d 305 (1998), in the public records context), *review denied*, 165 Wn.2d 1050, 206 P.3d 657 (2009). A court using this method multiplies a reasonable attorney rate for the prevailing party by a reasonable number of hours worked,[28] and then has discretion, in rare cases, to adjust the product upward or downward. *Mahler*, 135 Wn.2d at 434. The uncertain nature of a contingency fee contract may merit multiplying the lodestar product by some amount. *E.g.*, *Broyles*, 147 Wn. App. at 452-53 (using a lodestar multiplier in a contingency fee case). But, *Mahler* suggests that adjustments of the lodestar product are discretionary and rare. It was not an abuse of discretion for the trial court to refuse to give Justice Sanders the benefit of the exception when the rate times hours product already greatly exceeded the contingency fee for the case.

7. Fees and Costs on Appeal

¶100 Justice Sanders requests costs and attorneys fees from this appeal. *See PAWS* II, 124 Wn.2d at 271 (interpreting RCW 42.56.550(4)[29] to include appellate costs and fees); RAP 18.1(b) (requiring the attorney fees request to appear in Justice Sanders's opening brief).

---

[28] Justice Sanders's attorneys submitted their hourly rates and hours worked, the reasonableness of which are undisputed.

[29] Former RCW 42.17.340(4).

¶101 There is no reason why the definition of "prevailing" under the PRA on appeal should differ from the definition at trial. We therefore focus on issues bearing on either the "right to inspect or copy" or the "right to receive a response."[30] RCW 42.56.550(4).[31]

¶102 With this understanding in mind, the issues relevant to the apportionment of costs and fees on appeal are (1) whether Justice Sanders's agreed not to challenge what AGO produced in response to his PRA request, (2) whether AGO violated the PRA by not providing a "brief explanation," (3) what remedy follows from that violation, (4) whether AGO waived claiming exemption on the SPDs, and (5) whether each claimed exemption ultimately was valid. To assess the extent to which Justice Sanders prevailed on appeal, we summarize our disposition of these issues:

¶103 (1) We affirm, on different grounds, the trial court's determination that Justice Sanders did not forgo his challenge to what AGO produced in response to his PRA request. Justice Sanders prevailed on this issue.

¶104 (2) We affirm the trial court's holding that AGO violated the PRA by not providing a brief explanation. Justice Sanders prevailed on this issue.

¶105 (3) We affirm the trial court's holding that the remedy for the brief explanation violation is consideration when awarding costs and fees or imposing penalties for wrongful withholding. Justice Sanders argued for waiver or estoppel, and the State argued that the only remedy was to compel an explanation. Neither party prevailed on the remedy issue.

---

[30] We do not suggest that Justice Sanders is barred from recovering fees spent arguing about, for example, the appropriate penalty under the PRA. The PRA awards the prevailing party "all costs, including reasonable attorney fees." RCW 42.56.550(4); former RCW 42.17.340(4). These issues are the ones relevant to determining to what extent Justice Sanders is "prevailing," which affects what percentage of his total costs and fees *for the entire appeal* is due him.

[31] Former RCW 42.17.340(4).

¶106 (4) We affirm the trial court's holding that AGO did not waive the SPDs' exemption. The State prevailed on this issue.

¶107 (5) We affirm the trial court's rulings on all of the claimed exemptions except for SPDs 44 and 50-52. The State prevailed on the claimed exemptions we upheld (more than 95 percent of them), while Justice Sanders prevailed on the four claims of exemption we overturned (less than 5 percent).

¶108 As the trial court concluded, the fourth of these issues is the most important because the PRA's ultimate purpose is the production of public records. Justice Sanders therefore prevailed on only a small percentage of the most important issue, making it appropriate to discount his costs and fees. Considering the amount of work during this appeal allocated to the issues on which Justice Sanders prevailed, we find it appropriate to award Justice Sanders 25 percent of his total costs and fees on appeal.

## CONCLUSION

¶109 This case presented unique legal and factual complexities, which the trial court carefully considered. We affirm the trial court's decisions on all issues except (1) the interpretation of the attorney-client privilege and (2) the rulings on the claimed exemptions for SPDs 44 and 50-52. We do not reach the first issue because we assume, without deciding, that the attorney-client privilege protects communications only if they pertain to legal advice. On the second issue, we hold that the claimed exemptions were invalid and AGO's withholding of the documents was wrongful. We treat these documents as one "record" and impose the trial court's $8 per day penalty accordingly.[32] Finally, because

---

[32] The relevant number of days runs from the date of Justice Sanders's PRA request to the date on which the last of these four SPDs was produced.

Justice Sanders prevailed in part, we award him 25 percent of his costs and attorney fees on appeal.

MADSEN, C.J.; C. JOHNSON, ALEXANDER, OWENS, and FAIRHURST, JJ.; and BAKER, BECKER, and LEACH, JJ. PRO TEM., concur.

[No. 82855-5. En Banc.]
Argued June 8, 2010. Decided September 16, 2010.