CP SALMON CORPORATION,
et al., Plaintiffs,

v.

Penny PRITZKER, et al., Defendants.

Case No. 3:16-cv-00031-TMB

United States District Court,
D. Alaska.

Signed February 24, 2017

---

Andrew P. Richards, Sullivan & Richards LLP, Seattle, WA, for Plaintiffs.

Jeremy Hessler, U.S. Department of Justice, Washington, DC, for Defendants.

## ORDER ON MOTION TO COMPEL RETURN OF PRIVILEGED MATERIALS

TIMOTHY M. BURGESS, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants Secretary of Commerce, the National Oceanic and Atmospheric Administration ("NOAA"), and the National Marine Fisheries Service's ("NMFS") Motion to Lodge a Revised Administrative Record and to Compel the Return of Privileged Documents at docket 20. Plaintiffs, who are members of the Bering Sea Pollock fishery, oppose at docket 30, and Defendants have replied at docket 33. Defendants seek an order from this Court, pursuant to Fed. R. Evid. 502(b), compelling the return of certain inadvertently disclosed un-redacted documents which Defendants assert contain materials protected by both the attorney-client privilege and the attorney work-product privilege. Plaintiffs oppose, arguing that the documents identified by Defendants are not privileged or in the alternative that Defendants have waived any privilege through disclosure. For the following reasons, the motion to compel the return of the documents and lodge a revised Administrative Record is **GRANTED.**

### II. BACKGROUND

Plaintiffs are participants or representatives of the catcher/processor ("CP") sector of the Bering Sea directed Pollock fishery.[1] Defendants are the federal agencies and officials responsible for overseeing and regulating the nation's sustainable fisheries.[2] Plaintiffs challenge the final rule[3] promulgated by Defendants implementing a program to collect "cost recovery fees" in the Bering Sea and Aleutian Islands Management Area for the Western Alaska Community Development Quota ("CDQ") program for groundfish and halibut.[4] Plaintiffs also challenge the new rule as it applies to three limited access privilege programs: the American Fisheries Act, the Aleutian Islands Pollock, and the Amendment 80 Programs.[5] Plaintiffs contend that the final rule is an unauthorized attempt to collect cost recovery fees based on the Defendants' incorrect assertion that the CP sector is a limited access privilege program.[6]

The Administrative Procedure Act[7]

---

1. Dkt. 1 at 2–3; Dkt. 23 at 2.

2. NMFS is a sub-agency of NOAA within the Department of Commerce.

3. Fisheries of the Exclusive Economic Zone Off Alaska; Bering Sea and Aleutian Islands Management Area; New Cost Recovery Fee Programs, 81 Fed. Reg. 150, 150–73 (Jan. 1, 2016) (to be codified at 15 C.F.R. pt. 902; 50 C.F.R. pt. 679).

4. Dkt. 1.

5. *Id.*

6. *Id.* at 4.

7. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled

("APA") and the Magnuson–Stevens Act[8] entitles parties suffering legal wrong from final agency actions to seek judicial review. Defendants compiled an Administrative Record ("AR") containing the documents directly or indirectly considered by the agency in issuing the final cost-recovery rule and subsequently lodged the AR for the cost recovery rule with the Court on March 18, 2016.[9] On April 8, 2016, just three weeks after lodging the AR, Defendants notified Plaintiffs' counsel that certain privileged materials may have been inadvertently disclosed in the AR.[10] On April 19, 2016, and again on April 22, 2016, Defendants sent Plaintiffs "clawback letters," identifying thirteen documents Defendants believed contained un-redacted attorney-client communications or attorney work-product that were inadvertently disclosed as part of the AR.[11] A week later, Plaintiffs responded to the clawback letters challenging twelve of the thirteen documents as not privileged or otherwise protected.[12] On May 3, 2016, the Court granted the parties' joint motion to temporarily seal the AR pending briefing and resolution of the issue.[13]

### III. LEGAL STANDARD

Federal Rule of Evidence 502 applies to the "disclosure of a communication or information covered by the attorney-client privilege or work-product protection." When a disclosure of information is inadvertent, it does not operate as a waiver of privilege in a federal proceeding so long as: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[14]

The relevant part of Fed. R. Civ. P. 26 provides:

If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.[15]

---

8. 16 U.S.C. § 1855(f) ("Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, [the APA].").

9. Dkt. 10.

10. Dkt. 22 at 2.

11. Dkt. 22–1. Defendants sent a revised clawback letter on April 22, 2016. *See* Dkt. 22–2.

12. Dkt. 22–3. Plaintiffs do not object to the redaction of a cell phone number and other personally identifying information at AR 3007494.

13. Dkt. 17.

14. Fed. R. Evid. 502(b).

15. Fed. R. Civ. P. 26(b)(5)(B).

to judicial review thereof."); 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

## IV. DISCUSSION

This dispute concerns eight sets of materials (Documents A–H) that Defendants claim contains privileged materials.[16] Defendants contend that the documents in question are protected under either the attorney-client privilege, the attorney work-product privilege, or both. Defendants request an order from this Court compelling Plaintiffs to return the allegedly privileged materials, as well as permission from the Court to lodge a revised AR redacting the allegedly privileged documents. Plaintiffs oppose the return and redaction of all but one of the documents, arguing that the documents in question are either not privileged, or that any privilege was waived by their disclosure.[17] The Court has reviewed all of the disputed documents and briefly describes them below.

### A. Description of the Disputed Documents [18]

The documents at issue fall into two general categories: (1) legal review memoranda and (2) email correspondence. Documents A, B, C, D, and H are legal review memoranda prepared by Defendants' attorneys. Documents E, F, and G contain email correspondence between agency attorneys and agency employees regarding the cost recovery rule.

---

16. In the Motion to Compel at docket 20, Defendants identify seven sets of documents, A–G, that they argue contains privileged materials. In Defendants' supplement at docket 26, they identify an additional document (H) that they assert is also privileged, for a total of eight sets of documents. *See* Dkt. 20; Dkt. 26.

17. Dkt. 30.

18. To avoid confusion, the Court identifies the documents both with the letters used by Defendants to identify the documents in their

### 1. *Legal Review Memoranda*

Document A (AR 3011124–30)—This document is a draft internal legal memorandum from NOAA attorney John Lepore to Acting Deputy General Counsel Adam Issenberg. The very top of the document states "ATTORNEY REVIEW MEMORANDUM, ATTORNEY–CLIENT PRIVILEGED COMMUNICATION, DO NOT DISCLOSE."[19] The document is mostly redacted, however, Defendants maintain that one paragraph at AR 3011125, which discusses legal interpretations of limited access privileges and IFQs was inadvertently left un-redacted.[20]

Document B (AR 3012682–90) and Document C (AR 3012693–701)—These documents are almost entirely redacted drafts of an internal legal memorandum from NOAA attorneys John Lepore and Maura Burns Sullivan to Acting Deputy General Counsel Chris McNulty. The very top of the documents states "ATTORNEY REVIEW MEMORANDUM, ATTORNEY–CLIENT PRIVILEGED COMMUNICATION, DO NOT DISCLOSE."[21] The majority of the document is redacted, however, Defendants assert that two footnotes on the last pages of the documents (AR 3012690 and AR 3012701) were inadvertently left un-redacted.

Document D (AR 3015113–27)—The first page of this document is a Certificate of Attorney Review from Alaska Section Chief Lisa Linderman to NMFS Alaska Regional Administrator James Balsiger.[22]

---

Motion to Compel and Supplement (Documents A–H), and by their respective page numbers in the AR. *See* Dkt. 20; Dkt. 25; Dkt. 26.

19. Dkt. 25–1 at 2.

20. Dkt. 20 at 14.

21. Dkt. 25–2 at 2.

22. Dkt. 25–4 at 2.

The top of the document states in bolded all caps: "PRIVILEGED—DO NOT RELEASE—FOIA EXEMPT." The rest of the document appears to be a later unredacted draft of the Lepore/Sullivan memo to Chris McNulty (Documents B and C) discussed above.

Document H (AR 3013220–23)[23]—The first page of this document is a Certificate of Attorney Review from Alaska Section Deputy Chief Jonathan Pollard to NMFS Regional Administrator Balsiger.[24] The top of the document states in bolded all caps: "PRIVILEGED—DO NOT RELEASE— FOIA EXEMPT." The remaining three pages of the document are a legal review memorandum from NOAA attorney John Lepore to Deputy General Counsel Mary Beth Ward. The very top of the document states "ATTORNEY REVIEW MEMORANDUM, ATTORNEY–CLIENT PRIVILEGED COMMUNICATION, DO NOT DISCLOSE." Defendants contend that Document H is protected by attorney-client privilege because it provides legal advice to the client agency and as attorney work-product because it was prepared in anticipation of foreseeable litigation.[25] Indeed, the last page of the document discusses legal issues associated with the cost recovery rule and the risk of litigation.[26]

### 2. Email Correspondence

Document E (AR 3012231–34)—This document is an email chain between NOAA and NMFS attorneys. The signature block of the email contains a confiden-tiality notice advising that the contents of the email may be "confidential, privileged, or attorney work product, or is otherwise exempt from disclosure under applicable law."[27] Defendants assert that one paragraph in an email from NOAA General Counsel Section Chief Gene Martin discussing the northeast region's interpretation of a permit was inadvertently left unredacted. Defendants claim Martin is providing legal advice to the client agency, and it is therefore protected by attorney-client privilege.[28]

Document F (AR 3000256–57)—This document is an email chain from a NOAA employee to NOAA attorney John Lepore seeking legal advice with respect to the cost recovery rule. Part of the email is redacted but Defendants assert they inadvertently left the subject line of the request for legal advice un-redacted in Lepore's response to the NOAA employee.[29]

Document G (AR 3013603–05, 3013715–25, 3013837–40)—This document is several email chains with the subject line: "Cost Recovery Fee Program for W. Alaska CDQ, Amendment 80, AFA and Aleutian Islands Pollock RIN 0648–BE05." One email chain is between NOAA attorney John Lepore and NMFS Fisheries Management Specialist Karen Palmigiano. The emails solicit legal advice and discuss changes to the cost recovery rule proposed by Attorney Advisor Tricia Choe from the Commerce Department's Office of the Assistant General Counsel for Legislation and Regulation.[30] Some of the email is

---

**23.** Document H was not initially identified as containing privileged material in the original Motion to Compel at docket 20, but was identified in the Supplement to Federal Defendants' Motion to Lodge Revised Administrative Record and to Compel the Return of Privileged Documents at docket 26. Defendants moved to include Document H, *nunc pro tunc*, with their original motion to compel. *See* Dkt. 26.

**24.** Dkt. 28–1 at 2.

**25.** Dkt. 26 at 2.

**26.** Dkt. 28–1 at 5.

**27.** Dkt. 25–5.

**28.** Dkt. 20 at 18.

**29.** *Id.*

**30.** Dkt. 25–7.

redacted but all email strings contain a confidentiality notice advising that the contents of the email may be "confidential, privileged, or attorney work product, or is otherwise exempt from disclosure under applicable law."[31]

## B. The Ninth Circuit follows Wigmore's eight-part test for attorney-client privilege.

 The United States Supreme Court described the attorney-client privilege, which protects certain attorney-client communications from disclosure as "the oldest of the privileges for confidential communications known to the common law."[32] Courts have long-recognized "the safe harbor that it provides to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[33] The Ninth Circuit follows Professor Wigmore's eight-part test to determine whether information is protected under the attorney-client privilege:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser, (8) unless the protection be waived.[34]

The Ninth Circuit has also recognized that "[t]he attorney-client privilege protects

confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures."[35] The party "asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication."[36]

## C. The contents of the disputed documents fall under the attorney-client privilege.

### 1. Legal Memoranda (Documents A, B, C, D, and H)

Defendants assert that each of the legal review memoranda (Documents A, B, C, D, and H), are privileged because they contain legal advice from the agency's attorneys in response to requests by the client agency. Additionally, Defendants contend that the memos are protected attorney work-product because they were prepared in anticipation of foreseeable litigation. Plaintiffs argue that the documents are not protected under either privilege.[37]

The parties' citation to Ninth Circuit case law addressing legal protection for intra-agency legal memoranda is limited. Plaintiffs cite a Second Circuit case, *National Council of La Raza v. Department of Justice*,[38] to argue that the legal review memos at issue must be publicly disclosed because the legal advice was subsequently incorporated or adopted as policy by the Defendants.[39] Defendants counter that the agency's use of the internal legal review memoranda at issue here is distinguishable

**31.** *Id.*

**32.** *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

**33.** *Gomez v. Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001) (quoting *Upjohn*, 449 U.S. at 389, 101 S.Ct. 677).

**34.** *See e.g., United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

**35.** *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (internal citations omitted).

**36.** *Graf*, 610 F.3d at 1156.

**37.** Dkt. 30.

**38.** 411 F.3d 350 (2d Cir. 2005).

**39.** Dkt. 30 at 3.

from the Department of Justice's ("DOJ") use of the memo at issue in *La Raza*.[40]

*La Raza* involved a Freedom of Information Act ("FOIA") challenge by a coalition of advocacy organizations seeking the disclosure of an unpublished Office of Legal Counsel ("OLC") memo prepared for the DOJ regarding whether state and local law enforcement could lawfully enforce certain provisions of federal immigration law.[41] The Second Circuit held that the memorandum was not exempt from disclosure under FOIA's deliberative process exemption or attorney-client privilege because the DOJ had incorporated the memo into agency policy through repeated reference to and reliance on the memo.[42]

Plaintiffs contend that under *La Raza*, to the extent the explanations in NOAA's proposed and final cost recovery rules track the reasoning in the memoranda, it constitutes the agency's adoption of the memos as policy and thus requires their disclosure here.[43] Plaintiffs' argument, however, is too broad a reading of the Second Circuit's opinion in *La Raza*. A rule requiring disclosure of internal legal memos if the legal advice contained within is somehow embraced by the agency would eviscerate the attorney-client privilege by making any adhered-to legal advice fair game for disclosure. Such a situation would clearly frustrate the "safe harbor that [the attorney-client privilege] provides to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[44]

Contrary to Plaintiffs' assertions, there is no substantial evidence that NOAA expressly adopted or incorporated the legal review memoranda into its official policy through repeated public reference as was the case with the DOJ in *La Raza*. Defendants are correct that the present situation involving Documents A, B, C, D, and H is distinguishable from *La Raza* because the legal review memoranda at issue here were used solely within the agency, were not widely-circulated, and were not used to persuade third parties to take action.[45] The legal review memoranda here appears to provide a small group of decision-makers at the client-agency with legal advice regarding the cost recovery rule. Accordingly, the Court determines that the factual situation in the present case is distinguishable from the situation addressed in *La Raza*, such that the Second Circuit's opinion provides no legal support for Plaintiffs' argument that the legal memoranda must be disclosed because it was adopted or incorporated by the agency.

Defendants cite an unpublished opinion, *Jernigan v. Department of the Air Force*,[46] in which the Ninth Circuit stated that documents containing legal review are "exempt from disclosure under the attorney-client privilege."[47] Plaintiffs are correct, however, that under the applicable Ninth Circuit rules this unpublished opinion is

---

40. Dkt. 33 at 8–9.

41. *La Raza*, 411 F.3d at 352.

42. *Id.* at 353. Notably, then-Attorney General John Ashcroft made references to the legal authority of the OLC memo during a press conference, high-ranking DOJ officials repeatedly referenced the OLC memo in letters to the plaintiffs and Members of Congress, and DOJ officials summarized the OLC memo in presentations to state and local law enforcement agencies.

43. Dkt. 30 at 6.

44. *Gomez*, 255 F.3d at 1132 (quoting *Upjohn*, 449 U.S. at 389, 101 S.Ct. 677).

45. Dkt. 21 at ¶8.

46. 163 F.3d 606, 1998 WL 658662 (9th Cir. 1998).

47. *Id.*

not precedent,[48] nor can it be cited to because it was issued prior to 2007.[49] Thus, the opinion provides little in the way of guidance.

Beyond any case law, Congress has weighed in on what level of protection should be given to internal agency legal advice and memoranda. Congress enacted the FOIA which amended the APA to include language protecting from disclosure "interagency or intra–agency memorandums or letters."[50] Congress included this so called "exemption 5" provision to encourage a full, frank, and uninhibited exchange of ideas and opinions among government decision-makers.[51] Courts have interpreted this exemption to encompass traditional common-law privileges against disclosure including the attorney work-product doctrine, the executive deliberative process privilege, and the attorney-client privilege.[52] In the context of FOIA requests, numerous other courts have rec-

ognized that agencies need not disclose anything that would not be discoverable in a civil suit against the agency, and that internal agency memorandums fall within this protected category.[53]

■ Considering the lack of case law addressing these types of memoranda in this circuit, it is informative to apply Wigmore's eight-factor test to the legal memoranda in question. Such application reveals: (1) the memoranda convey legal advice; (2) the advice is from agency attorneys acting in their official capacities;[54] (3) the communications conveyed in the memos relate to the provision of legal advice regarding the cost recovery rule; (4) the information conveyed is made in confidence as evidenced by the notice and disclaimers at the top of each memo;[55] (5) the communication is from the attorney to the client agency;[56] (6) the client agency has asserted that the documents are pro-

48. *See* Ninth Circuit Rule 36–3(a) ("Unpublished dispositions and orders of this Court are not precedent except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

49. *See* Ninth Circuit Rule 36–3(c) ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit, except in the following circumstances.").

50. 5 U.S.C. § 552(b)(5).

51. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (explaining Congress's intent to "assure that subordinates within an agency will feel free to provide the decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action").

52. *See e.g., Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999); *Maricopa Audubon Society v. United States Forest Serv.*, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

53. *See e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); *Abuhouran v. United States State Dep't*, 843 F.Supp.2d 73, 79–80 (D.D.C. 2012).

54. The legal memoranda contained in documents A, B, C, D, and H are authored by NOAA attorneys John Lepore and Maura Burns Sullivan.

55. *See* Dkt. 25–1 at 2; Dkt. 25–2 at 2; Dkt. 25–4 at 2; Dkt. 28–1 at 2.

56. While Wigmore frames the fifth prong as protecting communications *by* the client, the Ninth Circuit has made clear that attorney-client privilege also protects confidential disclosures made by an attorney in response *to* a client's request for legal advice, so the fifth prong is satisfied. *See In re Grand Jury Investigation*, 974 F.2d at 1070.

tected;[57] (7) the disclosure of which by the agency is at issue in the motion before the Court; and (8) the client agency asserts that they have not waived the privilege.[58]

Applying Wigmore's eight factors, the Court concludes that the disputed memoranda and the legal advice contained within them embody the quintessential type of attorney-client communications meant to be protected by the attorney-client privilege. To conclude otherwise would only serve to chill agency attorneys from providing candid advice to agency decisionmakers for fear that anything they communicate in an internal legal memorandum would later be subject to disclosure.[59] Accordingly, the Court determines that the legal review memoranda in documents A, B, C, D, and H as well as the certificates of attorney review in documents C and H fall under the attorney-client privilege.[60]

### 2. Emails (Documents E, F, and G) contain protected attorney-client communications.

██ The Court must also determine if the email correspondence contained in Documents E, F, and G are privileged or otherwise protected from disclosure. In Document E, NOAA attorney Gene Martin provides a legal interpretation of permits with respect to the cost recovery rule. In Document F, the client agency seeks legal advice from NOAA attorney John Lepore on the cost recovery rule. And in Document G, Lepore offers legal advice to the client agency regarding the cost recovery rule in response to feedback provided by Commerce Department attorney Tricia Choe. Documents E and G contain notices and disclaimers that the contents of the emails may be privileged or otherwise protected attorney-client communications.[61] Applying the same Wigmore factors from above, the Court determines that the emails: (1) seek or convey legal advice; (2) from agency attorneys acting in their official capacities; (3) that the emails relate to the purpose of providing that advice; (4) that Documents E and G contain confidentiality notices;[62] (5) that the communications are between the attorney and client agency;[63] (6) the client agency has asserted the privilege; (7) the disclosure of which by the agency is at issue in the motion before the Court; and (8) the client agency asserts that they have not waived the privilege.[64] Accordingly, the Court finds that the disputed emails are attorney-client communications protected by the attorney-client privilege.[65]

---

**57.** Dkt. 20; Dkt. 21; Dkt. 22; Dkt. 33.

**58.** *See infra* Part IV.D.

**59.** *See Klamath*, 532 U.S. at 8–9, 121 S.Ct. 1060 (noting that FOIA exemption 5's "deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and that the ultimate goal of the privilege is to enhance "the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government") (internal citations and quotations omitted).

**60.** Because the Court determines that the documents are protected under the attorney-client privilege, the Court need not analyze the memoranda under the attorney work-product doctrine.

**61.** Dkt. 25–5; Dkt. 25–7.

**62.** *Id.* Although Document F does not contain the same confidentiality notice as Documents E and G, there is no indication that the NOAA employee or attorney had any intention that their exchange was not made in confidence.

**63.** *See supra* note 56.

**64.** *See infra* Part IV.D.

**65.** *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The attorney-client privilege protects confidential communications between attorneys and clients, which are

### D. Attorney-client privilege was not waived under Federal Rule of Evidence 502(b).

Having determined the disputed documents fall under the attorney-client privilege, the Court must assess whether Defendants waived this privilege by disclosing the disputed documents in the AR. Under Fed. R. Evid. 502(b), the disclosure of attorney-client privileged materials does not waive the privilege so long as: (1) the disclosure is inadvertent; (2) the privilege-holder took reasonable steps to prevent the disclosure; and (3) the privilege-holder promptly took reasonable steps to correct the error while complying with Fed. R. Civ. P. 26.[66]

■ Defendants assert that they did not waive attorney-client privilege for the disputed documents because the disclosure of the documents in the AR was inadvertent, the agency took reasonable steps to prevent the disclosure, and the agency promptly moved to correct the inadvertent disclosure.[67] Plaintiffs argue that any privilege was waived because Defendants have failed to show that the disclosure of the documents was inadvertent or that reasonable steps were taken to prevent disclosure.[68]

### 1. Defendants have made a showing that disclosure was inadvertent.

In support of their claim of inadvertent disclosure, Defendants have submitted declarations from NMFS Regional Administrator James Balsiger and by trial counsel Jeremy Hessler.[69] Plaintiffs contend the declarations should have been prepared by the assemblers and reviewers of the AR, and that the declarations of Balsiger and Hessler are insufficient to show the disclosure was inadvertent. Specifically, Plaintiffs argue that additional declarations from NOAA attorney John Lepore and Records Manager Ellen Sebastian are necessary to prove that the records were not intentionally disclosed.[70] Noticeably absent from Plaintiffs' argument is a citation to any authority suggesting that where multiple people have personal knowledge of the AR, that declarations from specific individuals but not others are necessary to make a showing of inadvertent disclosure. The Court declines the invitation to create such a requirement here. The Court finds that Hessler and Balsiger have sufficient personal knowledge and are in appropriate positions to assert inadvertence of disclosure and privilege over the disputed documents on behalf of Defendants.[71]

The numerous actions taken by Defendants after becoming aware of the disclosure as well as the declarations from Balsiger and Hessler leave little doubt that the inclusion of these materials or failure to redact certain portions of included materials was accidental. The Defendants have met their burden of showing that the disclosure of the disputed documents was inadvertent.

### 2. Defendants took reasonable steps to prevent disclosure.

In addition to inadvertence, the disclosing party must take reasonable steps to

---

made for the purpose of giving legal advice.").

**66.** Fed. R. Evid. 502(b).

**67.** Dkt. 20; Dkt. 33.

**68.** Dkt. 30 at 8–13.

**69.** Dkt. 21; Dkt 22.

**70.** Dkt. 30 at 10.

**71.** *United States v. Real Property at 475 Martin Lane, Beverly Hills Cal.*, 298 Fed.Appx. 545, 551 (9th Cir. 2008) ("When a declarant necessarily has first-hand knowledge of the facts contained in an affidavit by virtue of his or her position of employment, personal knowledge may be inferred.") (citing *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000)).

prevent disclosure.[72] The Hessler Declaration provides details of the precautions Defendants took to prevent disclosure.[73] The voluminous AR was compiled from records produced by NMFS and NOAA. After the initial compilation and review for personally identifying and confidential information by NMFS staff, the AR was reviewed by an agency attorney and a paralegal for the purposes of redacting privileged information.[74] All told, the AR consists of over 30,000 pages, many of which contain privileged information that was redacted by the agency prior to lodging the AR. Given the sheer number of pages and compressed timeframe in which to compile, screen, and lodge the AR, it is not surprising that a handful of documents were unintentionally disclosed or were under-redacted. In similar situations, other courts have found that such precautions to prevent disclosure of privileged materials are reasonable and do not waive the privilege.[75] Given the circumstances, the Court finds that Defendants took reasonable steps to review, redact, and prevent disclosure of privileged materials prior to lodging the AR.

### 3. Defendants took prompt and reasonable steps to rectify the disclosure.

Finally, the disclosing party must take prompt and reasonable steps to rectify the disclosure, including notification of the receiving party in accordance with Fed. R. Civ. P. 26(b)(5)(B).[76] Within three weeks of lodging the AR, counsel for Defendants emailed Plaintiffs' attorney to notify him that certain materials were inadvertently disclosed.[77] Within a month of lodging the AR, Defendants sent Plaintiffs two formal clawback letters characterizing the disclosures as inadvertent, asserting privilege over the disputed documents, and requesting their return.[78] The Court finds that Defendants promptly took reasonable steps to notify Plaintiffs of the inadvertent disclosures, and that Defendants' efforts to recover the inadvertently disclosed materials through the clawback letters complied with the applicable Federal Rule of Civil Procedure.

Pursuant to Fed. R. Evid. 502(b), Defendants did not waive attorney-client privilege when they inadvertently disclosed the documents at issue, because they took reasonable steps to prevent their disclosure and promptly moved to rectify the disclosure. Accordingly, the Court finds that these documents are privileged and GRANTS the motion to compel their return.

## V. CONCLUSION

Having reviewed all of the disputed documents, the Court determines that the materials are protected under attorney-client privilege. Accordingly, the Motion to Compel Return of Privileged Documents at docket 20 is **GRANTED**. IT IS HEREBY

---

**72.** Fed. R. Evid. 502(b)(2).

**73.** Dkt. 22.

**74.** *Id.*

**75.** *See e.g. Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 698 (N.D. Ga. 2010) (finding defendants' inadvertent production of documents which were protected by the attorney-client privilege did not result in waiver of those protections, and thus the return of the documents was required, where only four pages out of a more than 2,000–page produc-

tion were privileged, the documents had been checked by three different attorneys prior to production, and counsel immediately sought the return of the documents once they discovered their mistake).

**76.** Fed. R. Evid. 502(3).

**77.** Dkt. 22 at 2.

**78.** Dkt. 22–1; Dkt. 22–2.

ORDERED that Plaintiffs shall promptly return all privileged documents identified in this order to Defendants. IT IS FUR-THER ORDERED that Defendants shall lodge a revised Administrative Record consistent with this order, on or before March 7, 2017.

IT IS SO ORDERED.