IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| METHOW VALLEY CITIZENS COUNCIL, | ) ) ) | No. 40747-1-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| OKANOGAN COUNTY, | ) ) | |
| Respondent. | ) | |

COONEY, J. — Methow Valley Citizens Council (MVCC) sued Okanogan County (County) for violating the Public Records Act (PRA), chapter 42.56 RCW. In its complaint, MVCC claimed the County wrongfully redacted portions of a "checklist"[1] used to determine the adequacy of water for building permit applications. The County

---

[1] MVCC challenges identical redactions applied to multiple reproductions of the original checklist. Because the redacted portions challenged here were applied universally to the checklist's original language, and we find the reproduction in this case immaterial, we refer to the checklist in the singular.

responded that the redacted portions of the checklist were exempt from disclosure because they were privileged attorney-client communications.

A superior court commissioner agreed with MVCC and ordered the County to "allow inspection or copy of the requested records," subject to limitations. Clerk's Papers (CP) at 281. The matter came before a superior court judge on the County's motion for revision. Following an in camera review of the unredacted documents, the superior court concluded the redacted portions of the checklist and memorandum were privileged and not subject to disclosure.

MVCC appeals, arguing the checklist is not privileged and, even if privileged, the County waived any claim of privilege by producing a redacted version of the checklist. MVCC further claims policy reasons support a finding that the checklist is not privileged. The County maintains the checklist is protected by the attorney-client privilege, is not subject to disclosure under the PRA, and that it did not waive its claimed privilege. Finally, the County and the Washington State Association of Municipal Attorneys and Washington State Association of Counties (collectively "Amici") argue policy reasons support holding the checklist is privileged and that the privilege was not waived through the production of a redacted version of the checklist. We agree with the County and Amici and affirm.

BACKGROUND

The Okanogan County Planning Department is tasked with reviewing building permits and subdivision applications to determine legal water availability. On November 5, 2021, the Okanogan County superior court issued an order (November Order) interpreting WAC 173-548, the code governing the water resources program in the Methow River Basin. The practical effect of the November Order was that the County was required to alter the process and criteria it used to analyze and determine legal water availability in Water Resource Inventory Area 48 in the Methow Valley.

To assist it in complying with the November Order, the County, through its planning director Stephanie "Pete" Palmer, requested its outside legal counsel draft a memorandum with legal advice on how to comply with the November Order. In response, the attorney provided the County with a memorandum containing a checklist comprised of two tables: one for building permit applications and the second for subdivision applications. Each table included a list of numbered questions for the County to consider when evaluating legal water availability. "For each numbered question in the tables, there are corresponding instructions as to what the next step is if the answer is 'yes' or if it is 'no.'" CP at 319. "For some of the questions, along with the corresponding instructions, there is an explanation of the attorney's reasoning for that instruction." CP at 319.

Ms. Palmer made photocopies of the checklist portion of the memorandum that she then used to "help analyze the water adequacy for each permit application." CP at 71. Ms. Palmer handwrote notes on the copies as she reviewed applications. She maintained the marked-up copies of the checklist in a locked drawer in her filing cabinet and did not share the legal memorandum, including the checklist contained within it, or her marked-up copies with any other County employee.

Ms. Palmer mentioned her use of the checklist at an Okanogan Board of County Commissioners (BOCC) meeting held in May 2023. The meeting minutes state, "To date, regarding the processing of building permits, the planning department has processed 52 site analysis [sic] in the Methow regarding water checklists and they try to keep track and to treat everyone the same." CP at 445.

Following the meeting, MVCC requested the checklist pursuant to the PRA. Initially, the County withheld the original checklist in its entirety as "attorney-work product and attorney-client privileged." CP at 72, 98, 180. However, even though it still believed the document to be exempt from disclosure under the PRA, the County later produced a heavily redacted version of the memorandum and checklist contained within. The only unredacted information on the first page of the memorandum was the header. The redacted checklist within the memorandum revealed the questions Ms. Palmer was to consider in assessing each permit application but blocked out the portions of the document containing the advice and analysis of the County's attorney. Each page of the

4

memorandum and associated checklist contained headers that stated, "Attorney-Client Privileged & Confidential" or "A/C Privileged & Confidential." CP at 63-69. The County also produced 49 of the photocopies of the memorandum and checklist containing Ms. Palmer's handwritten notes with redactions identical to the original "clean" version of the memorandum and checklist.

Thereafter, MVCC sued the County for violation of the PRA, alleging in relevant part that the County "unlawfully withheld public records." CP at 19. In response, the County moved the superior court commissioner for in camera review of the unredacted checklist and memorandum. The County argued that the redacted information was privileged and therefore exempt from disclosure. MVCC then filed a motion for a show cause hearing under the PRA, arguing the checklist must be produced because it served an administrative function, rather than a legal function, and was therefore not privileged. Alternatively, MVCC claimed that even if the checklist was privileged, the County waived any claimed privilege by producing a redacted version of the checklist.

After reviewing the unredacted memorandum and checklist, a superior court commissioner agreed with MVCC and found the checklist was not privileged. The County then filed a motion to revise the commissioner's order. A superior court judge conducted an in camera review of the unredacted memorandum and checklist and, following a hearing, reversed the commissioner's order. The court issued findings of fact, conclusions of law, and an order.

In part, the court found:

7. The contents of pages 2-7 consist of the two "checklists" and the footnotes thereto. The redacted portions of the checklists and footnotes contain the attorney's assessment and conclusions as to whether/when the November 5 Order applies, opinions as to potentially applicable regulations, summaries of potentially applicable legal standards, advice on information the County may wish to consider as part of its determination, legal advice on what steps to take (including what language to use and when to seek further legal advice), opinions about potential risks to the county, and general analysis and application of the law.

. . . .

11. Ms. Palmer was the only person who used the Memorandum [and checklist]. Palmer Deposition, p. 31-32. Moreover, Ms. Palmer did not share either the original memorandum or the copies with other employees and kept them in a locked drawer.

. . . .

Nowhere in [the May 2023 BOCC] meeting did Ms. Palmer or the County refer to, adopt, announce, assert, or otherwise rely on any portion of the Memorandum to set forth a policy or a position on anything. Furthermore, nowhere did Ms. Palmer (or the County) indicate that the "checklist" was controlling, or an accurate statement of the law.[2]

CP at 320-21, 325. The court relatedly concluded that "[t]he County has met its burden of demonstrating that the attorney-client privilege applies to the Memorandum [and checklist]." CP at 327. Finally, the court concluded, "[n]o further disclosures are necessary." CP at 328.

MVCC timely appeals.

---

[2] This finding is included in the court's conclusions of law, but it is more appropriately considered a finding of fact.

ANALYSIS

MVCC presents four reasons why, as a matter of law, the checklist is not subject to the attorney-client privilege exception to disclosure. MVCC further argues that even if the attorney-client privilege was applicable, the County's production of a redacted version of the checklist waived any claim of privilege. Finally, MVCC asserts that exempting the redacted portions of the checklist and memorandum from disclosure is contrary to the policy of the PRA and prevents MVCC from bringing a successful Land Use Petition Act (LUPA), chapter 36.70C RCW, action. We disagree with each of MVCC's arguments and affirm.

MVCC claims that because the superior court entered legal conclusions, rather than factual findings, our review is de novo. [3]

"'A trial court reviews agency actions under the PRA de novo and "may conduct a [PRA] hearing based solely on affidavits."'" *Hood v. City of Vancouver*, 33 Wn. App. 2d 799, 810, 564 P.3d 1009 (2025) (quoting *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021)). Where the record on appeal consists solely of declarations or other documentary evidence, as it does in this case, we stand in the same position as the trial court and review challenged facts de novo. *See Serv. Emps. Int'l*

---

[3] We disagree the trial court did not make any findings of fact. The trial court conducted an in camera review of the unredacted checklist and memorandum and found the redacted portions were protected by the attorney-client privilege.

*Union Loc. 925 v. Univ. of Washington*, 193 Wn.2d 860, 866, 447 P.3d 534 (2019). The

application of the attorney-client privilege is a question of law that we review de novo.

The PRA must be "liberally construed and its exemptions narrowly construed" to

ensure that the public's interest is protected. RCW 42.56.030; *Livingston v. Cedeno*, 164

Wn.2d 46, 50, 186 P.3d 1055 (2008). In addition to the exemptions listed in RCW

42.56.230 – .475, the PRA also recognizes confidentiality protections found in "other

statute[s]" and exempts those protected documents from disclosure. RCW 42.56.070(1).

The attorney-client privilege is one such protection and is set forth in RCW 5.60.060(2).

*Soter*, 131 Wn. App. at 902.

As a preliminary matter, MVCC did not challenge any of the trial court's findings

of fact. [4] *See* RAP 10.3(g). MVCC does not argue that the redacted information is not an

attorney-client communication as a matter of fact. Rather, MVCC asserts that, as a

matter of law, the redacted information is not an attorney-client communication and

therefore not subject to the attorney-client privilege. Accordingly, we assume, without

deciding, that the redacted portions of the document are attorney-client communications.

---

[4] As the appellant, MVCC bore the burden of providing a complete record and
setting the scope of review. *See Starczewski v. Uniguard Ins. Grp.*, 61 Wn. App. 267,
273, 810 P.2d 58 (1991); RAP 10.4(g). MVCC's failure to assign error to this finding or
ensure this court received an unredacted copy of the checklist in the appellate record
reinforces our holding that the redacted information's status as protected by the attorney-
client privilege as a matter of fact is not in dispute.

Thus, the question before us is whether the attorney-client privilege applies to the redacted portions of the documents as a matter of law.

ATTORNEY-CLIENT PRIVILEGE

MVCC argues the checklist is not privileged because: (1) the checklists were not a communication between the County and its attorneys and were not created for the purpose of seeking attorney advice; (2) the County prepared the checklist for the administrative purpose of making legal available water determinations; (3) the County used the checklists as a standard form to assure building permit decisions were made in accordance with legal requirements; and (4) the County publicly recognized the documents as agency policy and practice.

*Checklist*

MVCC first contends the checklist was not a communication between the County and its attorneys and were not created for the purpose of seeking legal advice.

RCW 5.60.060(2)(a) provides: "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." Thus, the attorney-client privilege protects "'communications and advice between attorney and client.'" *Morgan v. City of Fed. Way*, 166 Wn.2d 747, 755, 213 P.3d 596 (2009) (quoting *Hangartner v. City of Seattle*, 151 Wn.2d 439, 452, 90 P.3d 26 (2004)). This includes "any information generated by a request for legal advice." *Doehne v.*

9

*EmpRes Healthcare Mgmt., LLC*, 190 Wn. App. 274, 281, 360 P.3d 34 (2015). The privilege also "extends to documents which contain a privileged communication." *Pappas v. Holloway*, 114 Wn.2d 198, 203, 787 P.2d 30 (1990). MVCC asserts that it "recognizes the attorney-client privilege and made no attempt to obtain privileged documents. MVCC did not request the 'Memorandum' prepared by Counsel, just the Checklists created and prepared by the County Planning Director to make the legal available water decision. . . ." Appellant's Answer to Amicus Curiae at 4. This contention seemingly miscomprehends the facts on two grounds. First, the checklists are contained within the memorandum prepared by the County's attorney; they are not separate documents. Secondly, although Ms. Palmer reproduced the checklist portion of the memorandum by photocopying it, and thereafter handwrote notes on the photocopies, Ms. Palmer's handwritten notes were released unredacted. The redacted portions of the photocopied documents were neither created nor prepared by Ms. Palmer. Rather the redacted information was created and prepared by the County's attorney, at the County's request, to provide the County with legal advice on how to comply with the November Order.

The redacted portion of the checklist contained in the memorandum was drafted by the County's attorney for the purpose of advising the County on how to comply with the November Order. Thus, regardless of whether Ms. Palmer reproduced the checklist,

10

as a matter of law the redacted information contained in the checklist is a privileged

attorney-client communication.

*Administrative Purpose*

MVCC contends the checklist was prepared on behalf of the County for its regular

administrative functions and is therefore not privileged. In support of its argument,

MVCC primarily relies on *Overlake Fund v. City of Bellevue*, 60 Wn. App. 787, 810 P.2d

507 (1991) (*Overlake* I) and *Morgan*, 166 Wn.2d 747. We are unpersuaded by either

case.

In *Overlake* I, the parties disagreed over whether documents prepared to assist the

City of Bellevue in determining the necessity of a zoning variance to permit a proposed

hotel were privileged. 60 Wn. App. at 791. There, following the denial of Overlake's

requested zoning variance, Overlake made a PRA request seeking documents the city of

Bellevue relied on in making its decision. *Id.* The city of Bellevue denied Overlake's

request, citing the "preliminary recommendation" and "pre-trial discovery" exemptions to

the PRA. *Id.* Overlake argued the documents were not exempt from disclosure and

requested in camera review of the documents, which the court denied. *Id.* at 792. The

trial court ultimately concluded the city of Bellevue had shown cause why the requested

documents were exempt from public disclosure. *Id.* On appeal, the parties disputed

whether the documents were protected by attorney-client privilege:

> Overlake contends that . . . the City had ordered an evaluation to find out
> whether Overlake's proposed hotel height was the minimum possible and to

11

help it determine whether Overlake was entitled to a height variance. If we accept Overlake's characterization of the documents, it appears that neither the work-product doctrine nor the attorney-client privilege applies because an "appraisal" or "study" of Overlake's property and other similar properties would be available in pretrial discovery. The City maintains, however, that [the City] requested the evaluation in order to advise the City whether it was at legal risk for its actions concerning Overlake's proposed development. If the City's characterization is accepted, the evaluation may incorporate communications protected under the attorney-client privilege or work product.

*Id.* at 796. Ultimately, we remanded for an in camera review for the trial court to determine whether the documents contained privileged information. *Id.* at 798.

Following an in camera review of the documents, the trial court determined the records sought by Overlake were "requested by the Bellevue city attorney to advise his client with respect to potential litigation, and therefore are exempt from public disclosure." *Overlake Fund v. City of Bellevue*, 70 Wn. App. 789, 793, 855 P.2d 706 (1993) (*Overlake* II). On appeal, we concluded the trial court properly held the requested documents were exempt from disclosure under the work product doctrine and declined to reach the issue of whether the attorney-client privilege also applied. *Id.* at 795.

In *Morgan v. City of Federal Way*, a municipal court employee complained of a hostile work environment. 166 Wn.2d at 752. The city of Federal Way's attorney investigated and a report was prepared. *Id.* Upon request by a news outlet, the city of Federal Way agreed to produce the report. *Id.* However, a municipal court judge was granted a temporary restraining order preventing the city of Federal Way from releasing the report. *Id.* On appeal, our Supreme Court considered whether the report was

protected by attorney-client privilege. *Id.* at 755. The court concluded the investigative report was not privileged because the attorney who prepared it was "hired as an independent investigator," and "the purpose of her investigation was not to provide legal advice, but to comply with the City's antidiscrimination policy." *Id.* The Supreme Court recognized the "report consists solely of a factual investigation and contains no legal analysis or recommendations." *Id.*

In reliance on *Overlake* I, MVCC argues, "the determinative issue is the public entity's purpose in creating the document at issue and how it is being used by the public entity—not that the document was created by an attorney." Op. Br. of Appellant at 25. But here, unlike in *Morgan*, and Overlake's characterization of the documents at issue in *Overlake* I, the memorandum and checklist provide the County's attorney's advice on how the November Order should be interpreted, her opinions on potential litigation risks and legal trends, her interpretations of relevant regulations and statutes, and her recommendations on when the County should seek additional legal advice. These are hallmark examples of legal advice protected by attorney-client privilege. *See Morgan*, 166 Wn.2d at 755.

MVCC posits the County prepared the checklist to aid in an administrative function—to help determine when a property has legally available water. We agree that, to some extent, the checklist provides the relevant inquiries to determine whether a permit should be issued. However, the redacted portions of the checklist extend beyond

relevant inquiries into permitting decisions and delve into litigation risks, legal trends, interpretations of regulations and statutes, and recommendations on when additional legal advice should be sought.

Finally, MVCC repeatedly points to the lack of "anticipated litigation" when the memorandum and checklist were created. Op. Br. of Appellant at 21, 27. However, whether a document was prepared in anticipation of litigation has no bearing on the attorney-client privilege analysis. *Hangartner*, 151 Wn.2d at 452 ("[T]he attorney-client privilege protects documents and records that fall within the privilege regardless of whether they are 'relevant to a controversy.'"); *Morgan*, 166 Wn.2d at 752; *Soter*, 162 Wn.2d at 745; *Overlake* II, 70 Wn. App. at 794-95.

The redacted portions of the memorandum and checklist were not simply created for administrative purposes. Instead, the redacted portions contain legal advice, opinions, and risk assessment, all of which are protected by attorney-client privilege. We are unpersuaded by MVCC's argument that the checklist was prepared for administrative purposes.

*Legal and Policy Compliance*

MVCC next argues the checklist was prepared in the regular course of the County's governmental activities to ensure compliance with legal requirements and is therefore not privileged. It contends that "[f]or the same reasons as in [*Morgan*], the County must disclose the [c]hecklists." Op. Br. of Appellant at 31. However, unlike the

report in *Morgan* that contained "no legal analysis or recommendations," the memorandum and checklist contained the County's attorney's "assessment and conclusions" as to when the "November 5 Order applies" and provided advice in the form of litigation risks, legal trends, interpretations of regulations and statutes, and recommendations on when to seek additional legal advice. *Morgan*, 166 Wn.2d at 755; CP at 71, 320.

MVCC maintains the checklist "involves nothing more than compiling third party facts into a form for complying with a court order." Op. Br. of Appellant at 32. This runs contrary to what the record reflects. The unredacted portions of the checklist demonstrate the general inquiries and questions the County uses in deciding whether to issue a permit. MVCC has access to this information. Further, the County's answers to each of the questions in the checklist were disclosed. This information may be nothing more than "third party facts" compiled into a form for compliance with a court order, but counsel's legal advice to the County is more than third party facts. The redacted portion of the checklist is therefore protected by attorney-client privilege.

*Recognition as Agency Policy and Practice*

Finally, MVCC argues that the County invoked the checklist at a BOCC meeting and incorporated it into the County's permitting process and policy, and it is therefore not subject to the attorney-client privilege exemption to disclosure. We disagree.

15

In support of its proposition, MVCC cites two federal cases: *National Council of La Raza v. Department of Justice*, 411 F.3d 350 (2d Cir. 2005) and *CP Salmon Corp. v. Pritzker*, 238 F. Supp. 3d 1165 (D. Alaska 2017).

In *La Raza*, the Second Circuit Court of Appeals analyzed whether a memorandum prepared by an attorney for the Department of Justice (Department) was protected by attorney-client privilege and therefore exempt from disclosure under the Freedom of Information Act (FOIA). 411 F.3d at 352. There, the Department "took the position that state and local law enforcement lacked authority to enforce the civil, as opposed to criminal, provisions of federal immigration law" and a memorandum written by counsel reflected this position. *Id.* at 352-53. A few years later, the Department reversed its position that was announced by the then attorney general at a press conference. *Id.* at 353. The attorney general referenced the earlier memorandum at the press conference and numerous other times. *Id.* at 353-55.

La Raza then filed a lawsuit seeking to compel production of the memorandum pursuant to FOIA. *Id.* at 355. The Department's position was that the memorandum was exempt from production because it was protected by the "deliberative process privilege, a sub-species of work-product privilege," and even if it was not, it was "independently protected from disclosure by the attorney-client privilege" exception to FOIA's disclosure requirements. *Id.* at 360 (quoting *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002). The court ordered the production of the memorandum:

> We cannot allow the Department to make public use of the Memorandum
> when it serves the Department's ends but claim the attorney-client privilege
> when it does not. Because the Department, in light of all the facts and
> circumstances . . . incorporated the OLC Memorandum into the
> Department's policy, the attorney-client privilege cannot here be invoked to
> bar that Memorandum's disclosure.

*Id.* at 361.

In *CP Salmon Corp.*, the district court was tasked with deciding whether

documents the defendants, the National Oceanic and Atmospheric Administration

(NOAA) and the National Marine Fisheries Service, asserted were privileged and

inadvertently produced needed to be returned.  238 F. Supp. 2d at 1167-68.  In analyzing

whether the documents, including legal memoranda, were privileged, the court found

that, unlike in *La Raza*, NOAA did not expressly adopt or incorporate the legal

memorandum into its official policy through repeated public reference.  *Id.* at 1169, 1172.

In particular, the court noted, "the legal review memoranda at issue here were used solely

within the agency, were not widely-circulated, and were not used to persuade third parties

to take action."  *Id.* at 1172.  The court in *CP Salmon Corp.* recognized:

> A rule requiring disclosure of internal legal memos if the legal advice
> contained within is somehow embraced by the agency would eviscerate the
> attorney-client privilege by making any adhered-to legal advice fair game
> for disclosure. Such a situation would clearly frustrate the "safe harbor that
> [the attorney-client privilege] provides to encourage full and frank
> communication between attorneys and their clients and thereby promote
> broader public interests in the observance of law and administration of
> justice."

*Id.* at 1172 (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001)). Ultimately, the court found the documents were protected by attorney-client privilege and ordered their return. *Id.* at 1171-77.

MVCC argues the County utilized the checklist in the same way the Department utilized the memorandum in *La Raza*. MVCC also argues the County publicly referenced and relied on the checklist to justify its actions. However, as the County points out, this case is distinguishable from *La Raza* and more similar to *CP Salmon Corp.* Here, the privileged contents of the memorandum and checklist have not been disclosed, let alone repeatedly disclosed. Instead, Ms. Palmer only mentioned the checklist in passing at a BOCC meeting while noting the planning department uses the checklist to "treat everyone the same." CP at 445. The County did not discuss nor rely on the privileged contents of the checklist to justify its actions or policies. Instead, the County is the only entity using the checklist, the checklist is not widely circulated, and the checklist is not used to persuade third parties to take action.

The redacted portion of the checklist and memorandum are exempt from disclosure because they are protected by attorney-client privilege.

WAIVER

MVCC next argues that even if the checklist is privileged, the County waived any claim of privilege by producing a redacted version of the document. The County responds that the court correctly ruled the County's disclosure of a redacted version of

the checklist did not waive the privilege. The County argues *Sanders v. State*, 169 Wn.2d 827, 240 P.3d 120 (2010), is dispositive on the issue. We agree with the County.

In *Sanders*, the Attorney General's Office (AGO) declined to produce certain documents after receiving a PRA request. 169 Wn.2d at 849. After a lawsuit was filed that claimed the AGO failed to comply with the PRA by withholding documents, the AGO produced some of its previously unproduced documents because it believed them to be "innocuous." *Id.* at 838. The AGO maintained the documents were exempt from disclosure because they were privileged but produced them in "a good-faith effort to narrow the area of dispute." *Id.* at 849. Our Supreme Court held the production of the documents the AGO believed were exempt by attorney-client privilege did not waive the privilege. *Id*. In so holding, the Supreme Court stated it "decline[d] to penalize agencies that cooperate with PRA litigants in this manner by construing such cooperation as a waiver." *Id.*

Similarly, here, we decline to penalize the County for attempting to comply with the PRA by producing a redacted version of the checklist. Further, MVCC's argument and cited cases on the issue are unavailing. First, MVCC fails to recognize *Sanders* in its opening brief despite the fact that it was the case the trial court relied on in deciding whether the County waived its privilege. Secondly, the cases cited by MVCC do not pertain to the PRA. *See Seattle Nw. Sec. Corp. v. SDG Holding Co.*, 61 Wn. App. 725, 812 P.2d 488 (1991) (selective disclosure during discovery dispute); *Martin v. Shaen*, 22

19

Wn.2d 505, 156 P.2d 681 (1945) (waiver of privilege due to witness testimony); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (waiver in the discovery context due to intentional disclosure of privileged communications); *Staley v. Gilead Scis., Inc.*, 19-CV-02573-EMC (LB), 2022 WL 1836820 (N.D. Cal. June 3, 2022) (waiver in the discovery context). MVCC fails to make a compelling argument to support its contention that the County's production of a redacted document waived its attorney-client privilege to the redacted portions.

POLICY

Lastly, MVCC argues the County's redaction of privileged portions of the checklist "[b]elies the PRA." Op. Br. of Appellant at 35. MVCC asserts it cannot be successful in a LUPA action without the redacted information in the checklist because that information "reflects the County's decision-making process on a core permitting issue critical to denying or approving a building permit, an issue that in and of itself can form the basis of the denial of a permit." Op. Br. of Appellant at 36. Contrary to this argument, the checklist is not the law nor does it bear on the legality of the County's permitting decisions. Based on the unredacted portions of the checklist produced by the County, MVCC is aware of the questions the County considers in issuing permits. If MVCC believes a permit has been issued or denied erroneously, it can initiate a LUPA action based on the law and the information the County has produced. The County's

20

withholding of its confidential legal advice does not inhibit MVCC from bringing legal action for the County's unlawful decisions.

As the County and Amici contend, requiring the County to disclose its confidential legal advice in the face of a PRA request would discourage public entities from seeking legal advice at all, or, if we accepted MVCC's waiver argument, from producing redacted versions of documents in a good faith effort to comply with the PRA. This would undoubtedly hinder public agencies' ability to comply with the law and seek necessary legal advice. It would also impede the public's access to public documents if public entities declined to disclose them, redacted or not, for fear of waiving privilege.

The redacted portions of the memorandum and checklist are privileged and exempt from disclosure under the PRA.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____     _____
Murphy, M.                          Staab, A.C.J.